[No. 3473-1.   Division One.   February 2, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. LEONARD NATHAN HAUGLAND, *Appellant.*

*Gary T. Jones,* for appellant (appointed counsel for appeal).

*Patrick R. McMullen, Prosecuting Attorney,* and *Larry E. Moller* and *William H. Nielsen, Deputies,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

It is uncontroverted that the victim in this case, a 16-year-old young woman, was severely beaten and burned and then left on a back road in Skagit County during the early morning hours of October 1, 1974. We must nevertheless detail some of the facts of the case in order to resolve the legal issues here presented.

Medical testimony and police photographs established that the victim had been extensively beaten on various parts of her body, particularly about the head. These injuries caused her to bleed from and about the eyelids, ears, and from the eyeballs themselves. Her eyes were swollen shut and her right eardrum ruptured. She sustained at least seven circular second- and third-degree burns on her left lower abdomen, left buttock, and thigh. The burns were the size and shape of an automobile cigarette lighter element.

When the young woman was initially in the hospital intensive care unit, her condition was such that she was drifting in and out of consciousness. On the first day of hospitalization, her eyes had to be pried open in order for her to see.

She was apparently in no condition to be talked to by officers at any length on October 1. She was, however, able to be interviewed on several occasions on October 2, and at that time described her assailants to the police. Unfortunately the police reports used at the trial with reference to the descriptions she initially gave, as well as the actual

descriptions of Leonard Nathan Haugland (defendant), and the other man who was also arrested as a result of the assault, are not a part of the record before us. It does appear, however, that the victim's initial descriptions were at least generally those of the defendant and the other man arrested, although she was to later reverse her descriptions of them somewhat. After the victim had described the men on October 2, the police later on that same date showed her two photographs, one of the defendant and the other of one Jerry Johnson. She at that time identified the photographs as being of the two men involved. The two photographs she was shown were not included with photographs of other nonsuspects as the officers testified was normally done in such showings.

Following the photographic identification of them, the defendant and Johnson were charged with assault in the second degree. Johnson pleaded guilty prior to trial. Neither Johnson nor the defendant testified at the trial.

The defendant was tried in the latter part of November 1974. At that time the victim acknowledged that her recollection of the events in question was still incomplete in some respects and hazy in others.

At the time the victim testified, she said she remembered as follows.

She left her home in Mount Vernon and walked downtown to the Silver Dollar Tavern looking for her boyfriend. She remembers that she arrived at the tavern about 1:30 a.m., did not find him, and then departed alone. Her next recollection is of being in a bluish-green car with the defendant and Johnson. She had not previously known either of them.

She identified the defendant in the courtroom and testified that he was the man who beat her after first accusing her of stealing his wallet. She further testified that he was the one who had inflicted the burns on her body using the automobile's cigarette lighter. She said this was done in the front seat of the car while the defendant's male companion held her down.

The victim concluded her trial testimony by stating that following the assault, she was "left off on the road," walked down the road, knocked on someone's door and asked for help.

The man who resided at the Fidalgo Island place where she sought refuge testified that she arrived there at approximately 7 a.m. on October 1, 1974. He said that at that time she related to him that she had walked about 2½ miles to get there.

The defendant's girl friend, with whom he lived in Mount Vernon, testified that the defendant had borrowed her bluish-green automobile with license number HBG 781 on the evening before the assault. She also testified that he and Jerry Johnson returned her car at approximately 7 o'clock, give or take 15 minutes, on the morning in question.

Various witnesses testified to seeing the defendant and Jerry Johnson drinking together at different places during the evening preceding the assault and in the early morning of October 1 when it occurred.

Several other witnesses saw both the defendant and Johnson with the victim in different locations in Mount Vernon between approximately 1:40 a.m. and 2:10 a.m. on October 1. Some of these witnesses knew them. One witness, a police officer who saw them together, knew both the defendant and the victim. That officer testified that the car they were in at approximately 2:10 a.m. on October 1, when he saw them, had license number HBG 781.

Two of the witnesses who testified at the trial were cocktail waitresses at the Town and Country Motor Inn in Mount Vernon. Their testimony was to the following effect. The victim, the defendant, and Johnson came into the cocktail lounge for a drink. Since the cocktail lounge was closing, they were refused service. The defendant appeared to them to have been drinking. When refused service, he became angry and the defendant, Johnson, and the victim left together. The defendant returned shortly afterward, accused the waitresses of stealing his wallet, and rummaged

through the purse of one of the waitresses. He was belligerent and left only when a telephone was picked up for the announced purpose of calling the police.

There was also testimony at the trial that the defendant formerly resided in the area where the victim was let out of the car and was familiar with that area.

Defendant was arrested on October 2, 1974. The officers testified that at the time of his arrest he remarked that the arrest must have something to do with the girl he had picked up hitchhiking.

The jury returned a verdict of guilty of assault in the second degree and the defendant brings this appeal from the judgment and sentence.

## ISSUES

There are four issues on this appeal.

ISSUE ONE. Did the court's refusal to change venue from Skagit County constitute error?

ISSUE TWO. Considering the circumstances of the victim's pretrial photographic identification of the defendant, should she still have been permitted to make an in-trial identification of the defendant as her assailant?

ISSUE THREE. Was it error to deny defendant's motion to dismiss made at the conclusion of the State's case?

ISSUE FOUR. Did the trial court err in refusing to give special instructions specifically cautioning the jury about the victim's identification testimony?

## DECISION

ISSUE ONE.

CONCLUSION. No error was committed by the refusal to change the venue of the trial.

■ Due process of law requires that a motion for change of venue be granted where there is a showing of either actual prejudice or probable prejudice. *State v. Stiltner*, 80 Wn.2d 47, 52, 491 P.2d 1043 (1971); *State v. Crudup*, 11 Wn. App. 583, 586, 524 P.2d 479 (1974).

We deem it important in cases of this kind to review the entire record and measure it against the following criteria:

Common criteria or factors generally utilized by courts in determining the propriety of an order granting or denying a motion for change of venue based on alleged prejudicial pretrial publicity are: (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn. Annot., 33 A.L.R.3d 17, 33 (1970). *See also Pretrial Publicity-Fair Trial*, Annot., 10 L. Ed. 2d 1243 (1964).

*State v. Crudup, supra* at 587.

In the present case, the defendant has failed to establish the existence of any of these criteria adverse to himself other than No. 8 relating to the nature of the charge itself. Since that factor would remain the same wherever the trial was held, it alone constitutes no showing of actual or probable prejudice. The trial court did not err in requiring that the case be tried in Skagit County.

Issue Two.

Conclusion. The trial court did not err in refusing to suppress the victim's identification testimony.

Defendant assigns as error "the trial court's refusal to suppress the complaining witness's identification testimony." His position is that "substantial likelihood of irreparable misidentification exists and that impermissible suggestion is inherent in the two-photograph display used by the investigating officer."

We have previously summarized the rules by which this issue is to be resolved in any given case together with the reason for those rules:

The validity of the identification procedure is a question of fact for the jury's determination and appellate

courts may reverse a determination of the identification issue adverse to the defendant only where the facts establish "[t]he photographic identification procedure . . . [is] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Gefeller*, 76 Wn.2d 449, 458 P.2d 17 (1969). To suggest is "to put . . . into the mind:" or "to seek to influence the mind . . ." Merriam-Webster Third New Int'l Dictionary (1969).

*Simmons* recognized the inherent hazards of misidentification where photographs are used, but concluded cross-examination exposed the weakness in the process and lessened the danger of convictions based upon misidentification. The court noted circumstances vary so much that each case must be examined on its own facts.

*State v. Lane*, 4 Wn. App. 745, 750, 484 P.2d 432 (1971).

By an instruction to which no exception was taken, the jury was instructed that it was the sole and exclusive judge of the credibility of the witnesses and the weight to be attached to the testimony of each.[1]

Here the testimony of the detective in charge of the investigation was that on the day following the assault, and before the victim was shown the two photographs, she had orally identified both of the alleged perpetrators of the

---

[1]"You are sole and exclusive judges of the evidence and the credibility of the several witnesses and of the weight to be attached to the testimony of each. In weighing the testimony of a witness, you have a right to consider his demeanor upon the witness stand, his apparent fairness or lack of fairness, the apparent candor of such witness, the reasonableness or unreasonableness of the story which the witness relates, and the interest, if any, you may believe the witness feels in the result of the trial, and any other fact or circumstance arising from the evidence which appeals to your judgment as in any wise affecting the credibility of such witness, and to give to the testimony of the several witnesses such degree of weight as in your judgment it is entitled.

"You will be slow to believe that any witness has testified falsely in this case, but if you do believe that any witness willfully has testified falsely as to any material fact, then you are at liberty to disregard the testimony of such witness entirely, except insofar as the same may be corroborated by other credible evidence in the case." Instruction No. 17.

offense, though there were some inaccuracies in the initial identification, and when she later saw the photographs she reversed her testimony as to which one had held her and which had burned and beaten her.

In view of the witness' initial confusion as to which of the two men held her and which actually administered the beating and burning, it should be noted parenthetically that so far as guilt of the crime charged is concerned, whether the defendant did in fact administer the actual beating and burning, or whether instead he held the victim while the other man did it, is immaterial. Under this State's aider and abettor statute, both would be considered principals. RCW 9.01.030; *State v. Palmer*, 1 Wn. App. 152, 155, 459 P.2d 812 (1969).

In addition to the descriptions given by the victim prior to viewing the photographs, there are other factors present in this case which are pertinent to the reliability of her identification. She was with her assailant for at least 20 to 30 minutes and may have been with him for several hours. She had ample opportunity and good reason to view the defendant carefully. The photographic identification as well as the in-person identification at the trial were made a relatively short time after the offense and with at least some degree of certainty. These factors are all relevant to the determination of whether her in-court identification was properly admitted. *Neil v. Biggers*, 409 U.S. 188, 199, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972); *State v. Kearney*, 75 Wn.2d 168, 169, 449 P.2d 400 (1969).

Although the victim's condition was arguably some justification for the identification procedure here employed, we consider the use of only the photographs of the two suspects in the case to have been unnecessarily suggestive and improper.

The photographic identification procedure used, however, cannot be viewed in isolation but must be viewed in light of the totality of the surrounding circumstances. *Simmons v. United States*, 390 U.S. 377, 383, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Nettles*, 81 Wn.2d 205, 209, 500 P.2d

752 (1972); *State v. Forsyth*, 13 Wn. App. 133, 140, 533 P.2d 847 (1975). For the reasons stated, we do not find that there was a substantial likelihood of misidentification resulting from the identification procedure here employed. It was, therefore, not error for the trial court to refuse to suppress the victim's identification testimony. Defense counsel's searching cross-examination covered the circumstances of the pretrial identification and all inconsistencies therein. The weight to be accorded to the victim's identification testimony in this case was for the jury to determine.

ISSUE THREE.

CONCLUSION. The trial court properly denied defendant's challenge to the sufficiency of the State's evidence.

Defendant assigns as error "the court's failure to grant Defendant's motion to dismiss at the conclusion of the State's case." The assignment is based on a claim of insufficiency of the evidence to establish that the defendant was the perpetrator of the offense and that the offense occurred in Skagit County.

■ As we have here held, the victim was properly permitted to identify the defendant in court as the one who assaulted her. The identification of the defendant by the victim was substantial direct evidence that he was the one who committed the crime and was sufficient to take the case to the jury as to that issue, particularly in view of the corroborative testimony presented. *State v. James*, 165 Wash. 120, 122, 4 P.2d 879 (1931); *State v. Johnson*, 12 Wn. App. 40, 46, 527 P.2d 1324 (1974). Whether there was sufficient circumstantial evidence of that fact independent of the victim's in-court identification of the defendant, we need not determine.

As to the venue issue, the jury was instructed as to what the State had to prove in order to show venue.[2] No assign-

[2]"You have been instructed that as one of the elements of the crime charged in the Information or included therein, it is necessary that the State prove beyond a reasonable doubt that the acts complained of occurred in Skagit County, Washington. In this respect, you are instructed that it is not necessary that the entire offense complained of,

ment of error has been made with respect to that instruction so it is the law of this case. *State v. Mott,* 74 Wn.2d 804, 805, 447 P.2d 85 (1968); *State v. Isaacs,* 3 Wn. App. 49, 51, 472 P.2d 548 (1970).

The victim was unable to testify that the assault occurred in Skagit County. The defendant relies on this as the basis of his claim that the State did not prove the offense occurred in that county as the court's instructions to the jury required it to do.[3]

Evidence that the assault was committed in Skagit County was as follows. The citizen to whose place the victim went for assistance lived in Skagit County, approximately 5 miles from the nearest county boundary, that being the boundary line between Island and Skagit counties. As noted, he testified that at the time she came to him for help, she said that she had walked 2½ miles to get there. In addition, the victim, the defendant, and the defendant's companion were all Skagit County residents. They were seen together in Mount Vernon, Skagit County, as late as approximately 2:10 on the morning on which the assault occurred. One of the cocktail waitresses who saw the victim with the defendant at the Town and Country Motor Inn in Mount Vernon testified that her eyes and face looked swollen at that time (although not nearly as badly as depicted by the photographs taken of the victim in the

or the acts constituting the entire offense, be committed in Skagit County, but that it is sufficient that the State prove beyond a reasonable doubt that the offense complained of was partly committed in Skagit County, or the acts or effects constituting, or requisite to the consummation of the offense, occurred partly in Skagit County." Instruction No. 10-A.

[3]The venue instruction given by the trial court (*see* footnote 2) was based on RCW 10.25.020 and *State v. Ring,* 54 Wn.2d 250, 252, 339 P.2d 461 (1959). At one time venue was determined by statute. RCW 10.25.010-.060. Since the adoption of the Criminal Rules for Superior Court effective July 1, 1973, however, it has been determined by court rule. CrR 5.1. The defendant was not prejudiced in any way by the instruction given, however, since it imposed a heavier burden on the State with respect to proof of venue than the present venue rule requires.

hospital later that day, according to this witness). There was no evidence or inference from evidence that any of the events connected with the assault occurred other than in Skagit County or that any of the principals had been out of Skagit County on the morning of the assault.

█ The foregoing constituted substantial circumstantial evidence that the crime was committed at least in part in Skagit County and was thus legally sufficient to take the case to the jury on the venue issue. *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971); *State v. Sims*, 14 Wn. App. 277, 281, 539 P.2d 863 (1975); *State v. Braxton*, 10 Wn. App. 1, 5, 516 P.2d 771 (1973).

The trial court properly denied the defendant's motion to dismiss.

ISSUE FOUR.

CONCLUSION. The lack of special instructions to the jury regarding identification testimony was not error since the defendant proposed no such instructions to the trial court.

Defendant assigns error "to the lack of any special instructions regarding identification testimony."

█ Defendant's trial counsel proposed no such special instructions below as required by CrR 6.15(a). Absent an instructional defect which invades a constitutional right of the defendant, the attention of the trial judge must be directed to the alleged error at a time it can be corrected. *State v. Robinson*, 78 Wn.2d 479, 481, 475 P.2d 560 (1970); *State v. Aleck*, 10 Wn. App. 796, 800, 520 P.2d 645 (1974).

No constitutional right of the defendant has here been invaded. The jury was instructed to the effect that it was at liberty to disregard the victim's identification testimony if it saw fit to do so. *See* footnote 1. In closing argument, defense counsel vigorously attacked the accuracy of the victim's identification of the defendant, as he had every right to do under the instructions given. Error will not now be predicated on the trial court's failure to give on its own motion yet additional instructions that were never re-

quested below. *State v. Proctor*, 71 Wn.2d 882, 885, 431 P.2d 703 (1967).

Affirmed.

FARRIS and SWANSON, JJ., concur.