[No. 3439-1. Division One. May 16, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH WAYNE BROWN, *Appellant.*

*Jack J. Ackerman,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Frederick Yeatts, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

A jury found the defendant guilty of two counts of rape and one count of assault in the second degree. He appeals from the judgment entered thereon and from sentences of 35 years on each rape count and 10 years on the assault count, the sentences to run consecutively.

The crimes were perpetrated in Seattle at approximately 1–month intervals and followed the same pattern. The victims were all young women who were waiting for a bus or hitchhiking and who accepted an offer of a ride from a personable, smiling young man driving a white Econoline van. Each victim was then driven to a secluded area where she was choked or otherwise terrorized and the crime was committed in the back of the vehicle.

The last victim observed and reported the license number of the van. Ownership of the vehicle was traced to the defendant through the license number, an arrest warrant issued and the defendant was arrested at his home. At the time the officers made the arrest, they observed a white Econoline van parked in the defendant's front yard. Following the arrest, the officers taped the doors of the van shut, posted a guard to secure the vehicle and sought and obtained a search warrant for it.

All three of the victims separately identified the defendant's photograph in a photo showup as the person who committed the offenses, and again identified him in court. Two of the victims had also separately identified the defendant in a police lineup, at which his attorney was present, though the third was unable to identify him at that time. No claim is made on this appeal that either the photo showups or the police lineup were unfairly conducted.

The defendant generally fit the description given by all of the victims at the time they reported the offenses. They

had also at those times given a description of identifiable characteristics of the van and were able to describe articles of apparel and jewelry worn by their assailant. At the trial, each of the victims identified certain of the items taken from the defendant's person at the time of his arrest as well as some of the articles found in the van at the time of the search as having been those worn by their assailant. Similarly, from photographs of the van admitted into evidence, each was able to identify remembered characteristics of the van.

The young women had all reported seeing a multicolored bumper sticker on the inside of the passenger side door of the vehicle which they recalled as referring to motorcycles and sex. At the trial, they all identified the sticker found on the passenger side door of the van, reading "Motorcycles— next to sex I like them best," as the sticker which they had observed when they were in the van.

Two fingerprint experts, one from the Seattle Police Department and one from the King County Department of Public Safety, separately examined and compared the palm print of the last victim with a palm print found inside of the back of the van at the time it was searched. The experts testified that they independently concluded that the print found inside the van was that of the last victim.

The defendant testified that he was elsewhere at the time of the offenses and his testimony was corroborated in a number of respects by several other defense witnesses, including his wife. He denied committing the crimes and denied having ever seen two of the three young women. He testified that the third young woman, whose palm print had been found inside of the van, resembled a hitchhiker whom he had picked up and allowed to put her backpack in the rear of his van.

The defendant's appeal presents six issues.

## ISSUES

ISSUE ONE. Was the defendant's vehicle, which was in the yard in front of his residence where he was arrested, seized

in violation of the fourth amendment to the United States Constitution?

ISSUE TWO. Was the trial court's instruction defining the "grievous bodily harm" element of the crime of assault in the second degree erroneous; and if so, was the error prejudicial to the defendant?

ISSUE THREE. Did the trial court err in the instruction given to the jury defining an "assault"?

ISSUE FOUR. Did the imposition of consecutive sentences constitute error?

ISSUE FIVE. Did the trial court err in refusing to admit the testimony of a psychologist called as an expert witness by the defendant?

ISSUE SIX. Did the trial court err in permitting one of the victims to make an in–court identification of the defendant when she had earlier been unable to identify him in a police lineup?

## DECISION

ISSUE ONE.

CONCLUSION. The search and seizure of the defendant's van was constitutional, and the motion to suppress the evidence taken from it was properly denied.

The defendant was arrested in his residence pursuant to an arrest warrant. It is not claimed that the arrest was unlawful. The van which was observed in the defendant's front yard was later searched pursuant to a valid search warrant that was obtained following the defendant's arrest.

The defendant's position is that the van was "seized" when it was taped shut and the guard posted thereon at the time of his arrest. From this, he argues that the arrest inside his residence did not justify a search or seizure in the yard outside of it, citing *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969) and *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), and that since the seizure did not come within any

of the recognized exceptions to the exclusionary rule mandated by the fourth amendment to the United States Constitution, all evidence obtained from the van should have been suppressed.

For the purposes of this opinion, we will assume without deciding that seizures without searches, as well as seizures with searches, fall within the proscription of the Fourth Amendment, and also, that the seizure of the vehicle was not a seizure lawfully incident to an arrest under the principles stated in *Chimel* and *Coolidge*. This is not to say, however, that either the seizure or the later search was improper under the facts presented.

The officers who went onto the defendant's property did so lawfully since they had a warrant for his arrest. They knew of the crimes which he had allegedly committed. As they approached the defendant's residence, they observed in his yard a van of the same description and bearing the same license number reported by the victims to have been used in the commission of those crimes.

■ There is no reason to treat an automobile differently than any other chattel employed to commit a crime. *State v. McKnight,* 52 N.J. 35, 243 A.2d 240, 253 (1968); *State v. Carter,* 54 N.J. 436, 255 A.2d 746, 753 (1969). The van in this case was an implement by which the crimes were committed. The officers thus had probable cause to believe that the vehicle they saw in the defendant's front yard was an implement with which the crimes were committed. *See State v. Campbell,* 13 Wn. App. 722, 729, 537 P.2d 1067 (1975).

Under these circumstances, and since the vehicle was in plain view of the officers who were in a place where they had a lawful right to be, they had a right to then and there seize it. *Harris v. United States,* 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968); *Chambers v. Maroney,* 399 U.S. 42, 52, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *State v. Canaday,* 79 Wn.2d 647, 685, 488 P.2d 1064 (1971); *State v. Johnson,* 17 Wn. App. 153, 154, 561 P.2d 701 (1977).

If exigent circumstances had existed, the officers would have been justified in then and there conducting a search of the van. *State v. Young*, 76 Wn.2d 212, 214, 455 P.2d 595 (1969); *State v. Campbell, supra* at 731. Since there may have been a question as to whether there were exigent circumstances, such as a risk that the vehicle or its contents may have been moved or destroyed, the officers properly followed the more prudent course of sealing and guarding the vehicle until they could obtain a search warrant before actually conducting their search. The search and seizure were constitutional and the evidence obtained thereby was properly admitted into evidence.

ISSUE TWO.

CONCLUSION. The trial court erred in defining "grievous bodily harm" to the jury, but such error was not prejudicial under the uncontroverted facts shown.

The count of the information charging the defendant with assault in the second degree against the last victim, charged not only an assault with intent to commit rape, RCW 9.11.020(6), but also as an assault causing "grievous bodily harm" to the young woman, RCW 9.11.020(3).

It is well settled that

> the words "grievous bodily harm" include a hurt or injury calculated to interfere with the health or comfort of the person injured; it need not necessarily be an injury of a permanent character. *By "grievous" is meant atrocious, aggravating, harmful, painful, hard to bear, serious in nature.*

(Italics ours.) *State v. Salinas*, 87 Wn.2d 112, 121, 549 P.2d 712 (1976). *Accord, State v. Miles*, 77 Wn.2d 593, 600, 464 P.2d 723 (1970).

Instruction No. 13 defined "grievous bodily harm" in the foregoing language but deleted the italicized language though the defendant proposed an instruction which would have supplied the deleted words. Absent "grievous bodily harm," an assault is not the felony of assault in the second degree defined by RCW 9.11.020(3), but is the gross misdemeanor of assault in the third degree. RCW 9.11.030; *State*

*v. James,* 56 Wn.2d 43, 45, 351 P.2d 125 (1960). The words which were omitted are those which distinguish the two offenses. *See* Judicial Conference, *Washington Pattern Jury Instructions (Criminal)* §§ 2.03, 2.04 (Draft 1976).

▮ The instructional error relates only to count 3 wherein the defendant was charged with assault in the second degree. As to that charge, the jury was instructed that the crime could be committed either if the assault was committed with the intent to rape or if the assault inflicted grievous bodily harm on the victim. If a verdict is obtained on the basis of alternative theories, and prejudicial error exists as to either of the alternatives, then the judgment and sentence must be set aside as to that offense. *State v. Roberts,* 88 Wn.2d 337, 344, 562 P.2d 1259 (1977).

The evidence going to this count was that during the course of an attempted rape, the victim had four teeth knocked from a denture and was choked into unconsciousness. The testimony establishing the commission of the offense by both of the alternative means charged was not controverted. The only issue as to this count was whether the defendant was the one who perpetrated the offense. The injury was serious and constituted grievous bodily harm. *See State v. Jackson,* 70 Wn.2d 498, 503, 424 P.2d 313 (1967). Under these circumstances, the erroneous definition of the term "grievous bodily harm" in instruction No. 13 was not prejudicial error justifying the granting of a new trial as to count 3. *See State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968).

ISSUE THREE.

CONCLUSION. The definition of "assault" in the trial court's instructions was proper.

In connection with the count of assault in the second degree, the court defined "assault" for the jury in its instruction No. 12. As to the defendant's assignment of error going to the giving of that instruction, we note only that the instruction used the well–established definition of what constitutes an assault under the law of this state. *State v. Rush,* 14 Wn.2d 138, 139, 127 P.2d 411 (1942);

*State v. Murphy,* 7 Wn. App. 505, 511, 500 P.2d 1276 (1972).

█ The choice of the specific wording used in an instruction is largely discretionary with the trial court. *State v. Biggs,* 16 Wn. App. 221, 225, 556 P.2d 247 (1976). The giving of instruction No. 12 was not error.

ISSUE FOUR.

CONCLUSION. The trial court did not err in exercising its discretion as to the sentences imposed.

The defendant's argument is that the sentences were of undue duration and that they should have been made to run concurrently instead of consecutively.

On the assault in the second degree conviction, the trial court sentenced the defendant to the statutory maximum of 10 years. RCW 9.11.020. The defendant was sentenced to 35 years on each of the rape counts, whereas he could have been given a life sentence on each of them. RCW 9.79.010; RCW 9.95.010.

The crimes of which the defendant was convicted arose from separate and distinct acts; therefore, the sentences are required by statute to run consecutively unless the trial court exercises its discretion by ordering the terms to run concurrently. RCW 9.92.080(3); *Grieve v. Smith,* 26 Wn.2d 156, 158, 173 P.2d 168 (1946).

█ The trial court's imposition of the sentences and its refusal to order those sentences to run concurrently were discretionary acts. *State v. Harris,* 10 Wn. App. 509, 513, 518 P.2d 237 (1974). Our review is thus limited to determining whether or not there was an abuse of discretion, and we can find that only if it can be said that no reasonable person would take the view adopted by the trial court. *State v. Harris, supra; State v. Hurst,* 5 Wn. App. 146, 148, 486 P.2d 1136 (1971).

In *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975), we upheld consecutive sentences on convictions of two counts of robbery. As there noted, the sentencing was to be viewed in light of all of the circumstances, "including the violence of the crimes committed and the possibility in

fact of mitigation of the sentence in the future by the Board of Prison Terms and Paroles." *State v. Bresolin, supra* at 395–96.

In the present case, the trial court had the right to reasonably conclude under the evidence and verdict that the defendant had deliberately embarked on a course of stalking young women on the streets of Seattle, carrying them off and then brutally raping them. There is but a fine line between the crimes committed in this case and homicide. *See, e.g., State v. Canaday,* 79 Wn.2d 647, 488 P.2d 1064 (1971). The trial court did not abuse its discretion in the sentences imposed. *State v. Bresolin, supra; Jansen v. Morris,* 87 Wn.2d 258, 261, 551 P.2d 743 (1976).

ISSUE FIVE.

CONCLUSION. The qualification of an expert to give opinion testimony is a matter within the sound discretion of the trial court, and the trial court's determination will not be disturbed unless that discretion is manifestly abused. We find no abuse of such discretion here.

Dr. Elizabeth Loftus, a professor of psychology at the University of Washington, was called by the defendant as an expert witness to testify concerning her studies, conclusions and opinions as to eyewitness testimony generally, and as to the eyewitness identifications in this case particularly.

At the conclusion of the offer of proof made out of the presence of the jury, wherein this witness testified to the foregoing, the trial court ruled that the witness' expertise had not been established. The trial court also ruled that the offered opinions were highly speculative and founded on assumptions contrary to any evidence in the case. As we recently held,

> the admission or exclusion of opinion evidence is within the sound discretion of the trial court. *Weber v. Biddle,* 72 Wn.2d 22, 24, 431 P.2d 705 (1967); *Martin v. Huston,* 11 Wn. App. 294, 301, 522 P.2d 192 (1974). If the reasons for admitting or excluding the opinion evidence are both fairly debatable, the trial court's exercise of discretion

will not be reversed on appeal. *Hill v. C. & E. Constr. Co.*, 59 Wn.2d 743, 746, 370 P.2d 255 (1962); *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.*, 15 Wn. App. 608, 613, 550 P.2d 701 (1976). *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 220–21, 562 P.2d 1276 (1977). Based on our review of the offered opinion testimony, we cannot conclude that the trial court abused its discretion in excluding it.

ISSUE SIX.

CONCLUSION. The questioned in–court identification of the defendant by one of the victims was not violative of due process standards and the trial court did not err in refusing to suppress such testimony.

The victim whose identification testimony is challenged was assaulted on May 11, 1974. It was not until almost 3 months later, on August 1, 1974, following the defendant's arrest, that she viewed a police lineup which included the defendant. At that time, she did not identify anyone in the lineup as her assailant. She was later interviewed by a deputy prosecuting attorney and then on August 15, 1974, was shown a photographic montage which included the defendant's photograph. At that time she selected the photograph of the defendant as that of her assailant. The defendant assigns error to the trial court's denial of his motion to suppress her in–court identification testimony.

■ The law is that

The validity of the identification procedure is a question of fact for the jury's determination and appellate courts may reverse a determination of the identification issue adverse to the defendant only where the facts establish "[t]he photographic identification procedure . . . [is] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Gefeller*, 76 Wn.2d 499, 458 P.2d 17 (1969).

*State v. Lane*, 4 Wn. App. 745, 750, 484 P.2d 432 (1971). *Accord, State v. Haugland*, 14 Wn. App. 853, 858, 545 P.2d

1237 (1976). Possible inferences of opportunities for misidentification do not amount to substantial likelihood of irreparable misidentification. *State v. Coburne,* 10 Wn. App. 298, 307, 518 P.2d 747 (1973).

In addition to the descriptions given by the victim at the time she reported the offense, there are other factors present in this case that bear on the reliability of her identification: the time she had been with her assailant, the opportunity she had to view him clearly, and her photo–showup identification of the defendant. These factors are all relevant to the determination of whether the victim's in–court identification was properly admitted. *Neil v. Biggers,* 409 U.S. 188, 199, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972); *State v. Kearney,* 75 Wn.2d 168, 169, 449 P.2d 400 (1969); *State v. Haugland, supra* at 860.

We conclude in this case as we did in *State v. Haugland, supra* at 861:

> we do not find that there was a substantial likelihood of misidentification resulting from the identification procedure here employed. It was, therefore, not error for the trial court to refuse to suppress the victim's identification testimony. Defense counsel's searching cross–examination covered the circumstances of the pretrial identification and all inconsistencies therein. The weight to be accorded to the victim's identification testimony in this case was for the jury to determine.

Affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied August 8, 1977.