[No. 47191–6.   En Banc.   June 18, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. RICK
LAIR, *Defendant,* DIANE WEBB,
*Petitioner.*

*William Johnston,* for petitioner.

*David S. McEachran, Prosecuting Attorney,* and *Charles J. Tull, Deputy,* for respondent.

WILLIAMS, J.—Petitioner Diane Webb was convicted by a

jury of one count of possession of phencyclidine, a controlled substance. The Court of Appeals upheld the conviction in an unpublished opinion, and we affirm.

On January 11, 1978, Bellingham police officers, acting on information supplied by an informant, obtained a search warrant authorizing a search for a "[c]ontrolled substance—marijuana" at 1248 Humboldt Street in Bellingham. Armed with the search warrant, the officers searched the premises and discovered marijuana and marijuana paraphernalia. In addition, the police seized a container of white pills, an envelope containing two baggies of mushrooms, items which appeared to be hashish, and additional items which appeared to be other unmarked controlled substances.

In the course of the search, a detective observed a folded piece of paper on a shelf on which marijuana and other paraphernalia were located. The officer testified that on previous searches he had seen similarly folded packets which contained controlled substances. He opened the paper and observed a fine white powder inside. Suspecting it to be cocaine, the officer seized the paper and powder. Subsequent laboratory analysis established the powder to be phencyclidine.

Rick Lair and Diane Webb were each charged with two counts of unlawful possession of a controlled substance— count 1 for possession of marijuana and count 2 for possession of phencyclidine. Webb pleaded guilty to the first count, but went to trial on count 2. Lair was acquitted.

On appeal, petitioner raises three issues. First, she maintains that the information presented to the district court judge was insufficient to establish probable cause.

The affidavit offered in support of the search warrant contained the following information provided by the affiant, Robert Boule:

1. An informant, John Farrow, told affiant that he, Farrow, had delivered quantities of marijuana to a "Rick" at 1248 Humboldt Street in Bellingham in the early evening on January 9, 1978.

2. On the following day, January 10, Farrow told one John Henifin that he, Farrow, could get marijuana from "Rick" if Henifin wanted to buy it.

3. The affiant has known both John Farrow and John Henifin for 3 years.

4. John Henifin has given information previously which has been used to obtain search warrants, and this information has proved to be correct and reliable.

5. John Henifin told affiant that when "kids want drugs" "Rick" would get it to them through Farrow or a Bob Luder.

6. Bob Luder was arrested as a juvenile probation violator at the 1248 Humboldt Street residence on January 10, 1978.

Robert Boule also appeared personally before the district court judge and was examined under oath. *See* JCrR 2.10(c).

Based on the affidavit, it appears that of the two secondary informants, Farrow and Henifin, only Henifin had a proven "track record" of supplying accurate, helpful information to law enforcement officers. Thus, petitioner contends, the trial court erred in finding probable cause based on allegations made by Farrow, an informant whose reliability was not established.

When an affidavit in support of a search warrant contains hearsay information, the constitutional criteria for determining probable cause is measured by the 2–pronged *Aguilar–Spinelli* test. The first prong of the test seeks to evaluate the trustworthiness of the informant's conclusions based on the underlying circumstances and sources of his knowledge. The second prong tests veracity. It seeks to evaluate the truthfulness of the informant. *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *State v. Partin,* 88 Wn.2d 899, 903, 567 P.2d 1136 (1977). It is the second prong which is here at issue.

The veracity prong of the *Aguilar–Spinelli* test may

be satisfied in either of two ways: (1) the credibility of the informant may be established; *State v. Thompson,* 13 Wn. App. 526, 530, 536 P.2d 683 (1975); *State v. Walcott,* 72 Wn.2d 959, 966, 435 P.2d 994 (1967); or (2) even if nothing is known about the informant, the facts and circumstances under which the information was furnished may reasonably support an inference that the informant is telling the truth. *State v. Johnson,* 17 Wn. App. 153, 155, 561 P.2d 701 (1977); *Spinelli v. United States, supra* at 416. *See generally State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973) ("citizen" informant). *See also* Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L. Rev. 741 (1974).

The most frequent way in which a hearsay informant's credibility is established is by a showing that the informant has previously supplied accurate, helpful information to law enforcement authorities. *State v. Thompson, supra; State v. Pate,* 12 Wn. App. 237, 529 P.2d 875 (1974). The existence of a proven "track record" of reliability reasonably supports an inference that the informant is presently telling the truth. *See State v. Thompson, supra.*

In the event an informant cannot demonstrate a record of truthfulness, the second prong of the *Aguilar–Spinelli* test may be satisfied if the magistrate is provided sufficient facts to determine that the informant's information on the specific occasion is reliable. As one court has explained:

> Even knowing nothing about the inherent credibility of a source of information, we may still ask, "Was the information furnished under circumstances giving reasonable assurances of trustworthiness?" If so, the information is "reliable," notwithstanding the ignorance as to its source's credibility.

*Thompson v. State,* 16 Md. App. 560, 566, 298 A.2d 458 (1973).

■ In the present case, several circumstances are relevant to Farrow's veracity, even though he had no "track record". First, Farrow's statement was made against his penal interest and was made to a private individual, not a

law enforcement official. Statements against penal interest are not often made lightly and may support an inference of reliability. *State v. Johnson, supra; United States v. Harris,* 403 U.S. 573, 581, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).

Petitioner argues that Farrow's statement was not entitled to particular weight as an admission against penal interest, precisely because it was *not* made to a police officer. Since a private citizen would be less likely to make use of the information to the informant's detriment, it is urged, the statement would not be one against interest. It must be remembered, however, that the admission against penal interest is used to help determine the *trustworthiness* of the informant's information. One way of answering this question is to inquire whether an informant would have a motive to lie to his listener. *United States v. Harris, supra* at 583–84. Since one who admits criminal activity to a police officer faces possible prosecution, it is generally held to be a reasonable inference that a statement raising such a possibility is a credible one. *See* 1 W. LaFave, *Search and Seizure* § 3.3, at 522–35 (1978).

There is, however, respectable authority for the view that an admission to a private individual is also trustworthy:

> Indeed, as a general proposition there is more reason to rely upon such admissions than admissions made directly to police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk.

1 W. LaFave, *supra* § 3.3, at 530. *See also Comi v. State,* 26 Md. App. 511, 516–17, 338 A.2d 918 (1975); *Commonwealth v. Kaschik,* 235 Pa. Super. Ct. 388, 344 A.2d 519 (1975).

Particularly where the admission is not the only indication of reliability, we think it is *one factor* to consider when analyzing whether hearsay information provided by an informer without a "track record" is trustworthy enough to establish probable cause. *United States v. Harris, supra* at 580–84.

Second, Farrow's information was corroborated by con-

clusory statements of another informant, Henifin, whose veracity was established. *United States v. Harris, supra* at 581; *Jones v. United States,* 362 U.S. 257, 271, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960); *United States v. Allsenberrie,* 424 F.2d 1209 (7th Cir. 1970). Petitioner argues that Henifin's corroborating statement has no significance, since Henifin's statements do not satisfy the basis–of–knowledge prong of the *Aguilar–Spinelli* test. *See* Moylan, *supra* at 773. A reliable informant's hearsay or conclusory statements, however, may be used to establish probable cause when they corroborate information given by an informant whose reliability has not been established, even though the conclusory statements themselves would not satisfy both of the *Aguilar–Spinelli* standards. *United States v. Harris, supra; Jones v. United States, supra; see generally* 1 W. LaFave, *supra* § 3.3, at 551–55. In the present case, Henifin, the reliable informant, corroborated Farrow's statement that marijuana was available from Rick at the Humboldt Street address.

Third, the Court of Appeals attached significance to the fact that the unreliable informant, Farrow, was named in the affidavit. Petitioner contends this fact is likewise of no significance. To the extent that the informant's name is the *only* information claimed to support his or her veracity, we have recently held that a mere name is insufficient. *State v. Sieler,* 95 Wn.2d 43, 48, 621 P.2d 1272 (1980). As we explained in *Sieler,* where the tip was given over the telephone by a person who gave his name,

> [t]he reliability of an anonymous telephone informant is not significantly different from the reliability of a named but unknown telephone informant. Such an informant could easily fabricate an alias, and thereby remain, like an anonymous informant, unidentifiable.

*State v. Sieler, supra* at 48. When, however, there is an underlying factual basis for the statements, or other indications of reliability, the additional fact that an informant is named is at least more helpful than no name at all and may be one circumstance contributing to a conclusion that the

information in an affidavit was reliable. *State v. Sieler, supra.* This view is supported by those cases which require that, where the informer is anonymous,

the supporting documents or testimony must provide the issuing court with *a stronger basis for finding the hearsay statements credible than if the informant is identified.*

(Italics ours.) *State v. Patterson,* 83 Wn.2d 49, 52, 515 P.2d 496 (1973). *See also United States v. Harris, supra* at 579. Here, where there were other indications of Farrow's veracity and his name was known to the reliable informant, Henifin, and to the affiant, Boule, we may consider it in combination with the other factors.

Although the application for the search warrant was not without some deficiencies, we conclude that it provided enough facts to permit the magistrate to determine reasonably that the informant's information was reliable and that such information established probable cause.

Petitioner next maintains that the trial court erred when it denied petitioner's motion for a posttrial evidentiary hearing to inquire into the truthfulness of the contents of the affidavit.

■ In a pretrial hearing, petitioner attacked the sufficiency of the affidavit *on its face* and argued that the seizure of paper containing phencyclidine could not be sustained under the plain view doctrine. The hearing judge denied the motions. The veracity of the affiant's statements in the affidavit supporting the search warrant was not challenged at that time, either in an oral motion, in petitioner's supporting memoranda, or at trial. The issue was first raised in petitioner's posttrial motion for arrest of judgment and new trial, even though counsel knew of the allegedly untruthful statements at the time of the other pretrial motions. Under these circumstances, the Court of Appeals was correct in holding petitioner had waived any error.

Finally, the Court of Appeals held that the seizure of the white powder enclosed within the folded paper packet was justified under the plain view doctrine. Petitioner urges

that the requirements of the plain view doctrine were not met because the seizure was not made under exigent circumstances, and because the material was neither come upon inadvertently nor immediately recognized as evidence.

The plain view doctrine has at least three elements: (1) a prior justification for police intrusion—whether by warrant or by a recognized exception to the warrant requirement; (2) an inadvertent discovery of incriminating evidence; and (3) immediate knowledge by police that they have evidence before them. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Daugherty,* 94 Wn.2d 263, 267–68, 616 P.2d 649 (1980); *State v. Murray,* 84 Wn.2d 527, 527 P.2d 1303 (1974), *cert. denied,* 421 U.S. 1004, 44 L. Ed. 2d 673, 95 S. Ct. 2407 (1975); *State v. Johnson,* 17 Wn. App. 153, 561 P.2d 701 (1977).

Petitioner maintains that there is a fourth and separate element requirement in the plain view doctrine: exigent circumstances. Even assuming the other three elements were met in this case, petitioner argues that the police could not seize the folded packet at issue without a warrant, unless they could make a showing of exigent circumstances. Since the officers could not make such a showing, petitioner contends the seizure violated the Fourth Amendment.

The relationship of exigent circumstances to the plain view doctrine has been the subject of much discussion and some inconsistency in the case law in Washington. The decisions in *State v. Day,* 7 Wn. App. 965, 503 P.2d 1098 (1972), and *State v. Brown,* 17 Wn. App. 587, 564 P.2d 342 (1977), appear to require exigent circumstances as a separate element of a seizure made under the plain view doctrine. *State v. Glasper,* 84 Wn.2d 17, 21, 523 P.2d 937 (1974), arguably supports that conclusion in dicta. *Contra, State v. Campbell,* 13 Wn. App. 722, 730, 537 P.2d 1067 (1975); *State v. Johnson, supra* at 157–58. The confusion may stem from the leading plain view case, *Coolidge v. New Hampshire, supra,* in which the United States Supreme Court explained, at page 468:

The limits on the [plain view] doctrine are implicit in the statement of its rationale. The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that *no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances."* Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police *may not enter* and make a warrantless seizure.

(Footnote and citations omitted. Some italics ours.)

■ A review of plain view cases reveals no persuasive support for petitioner's argument that there must be exigent circumstances before an object in plain view may be seized. Indeed, a careful reading of *Coolidge* reveals that the above quoted paragraph is merely an explanation of the *first* element of plain view, the justified presence of the police. *State v. Johnson, supra* at 158–59. The *initial entry* of the law enforcement officers was the focus of the Supreme Court's attention at the time it discussed exigent circumstances. This is made plain when one reads further:

An example of the applicability of the "plain view" doctrine is the *situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.* Cf. *Go–Bart Importing Co.* v. *United States,* 282 U. S. 344, 358; *United States* v. *Lefkowitz,* 285 U. S. 452, 465; *Steele* v. *United States,* 267 U. S. 498; *Stanley* v. *Georgia,* 394 U. S. 557, 571 (Stewart, J., concurring in result). Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. . . .

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. *The doctrine serves to supplement the prior*

*justification*—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—*and permits the warrantless seizure.*

(Italics ours.) *Coolidge v. New Hampshire, supra* at 465–66.

It is clear from the above that the court contemplates exigent circumstances are not required to seize an object in plain view, *if the officer has lawfully intruded into the place from which he viewed that object. Coolidge v. New Hampshire, supra; see* Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L. Rev. 1047, 1096–1101 (1974).[1]

Accordingly, we hold that exigent circumstances are not a fourth and separate element of the plain view doctrine, but are merely one factor to be considered in determining whether there has been a justifiable intrusion.

Petitioner also argues that the seizure of the folded paper packet did not satisfy the second and third requirements of the plain view doctrine: that is, that the seizure was neither inadvertent, nor was it immediately apparent to the police that they had evidence before them.

■ Objects are immediately apparent for purposes of a plain view seizure when, considering the surrounding facts and circumstances, the police can reasonably conclude they have evidence before them. *State v. Murray, supra* at 535; *United States v. Wysong,* 528 F.2d 345 (9th Cir. 1976); *United States v. Wheeler,* 459 F.2d 1228 (D.C. Cir. 1972); *People v. Caruso,* 2 Ill. App. 3d 80, 276 N.E.2d 112 (1971); *see* 2 W. LaFave, *Search and Seizure* § 4.11, at 176–77; § 6.7, at 482. In this case, the search warrant specified that the search was limited to marijuana, and the police had

---

[1]Some of the confusion over exigent circumstances may also have arisen because the exigent circumstances requirement is most often found in searches and seizures involving automobiles or searches incident to arrest. *See* Williamson, *The Supreme Court, Warrantless Searches, and Exigent Circumstances,* 31 Okla. L. Rev. 110 (1978); Moylan, *The Automobile Exception: What It Is and What It Is Not—A Rationale in Search of a Clearer Label,* 27 Mercer L. Rev. 987 (1976).

already discovered the marijuana and its related paraphernalia. The folded paper packet was located on the same shelf as some of the marijuana. Although the officer knew the packet did not contain marijuana, he felt it might contain another controlled substance. One officer testified that it appeared to be the same or similar type of packet he had previously observed on other occasions to contain controlled substances. The trial court concluded that under all the circumstances, particularly the presence of other drugs on the same shelf and the officer's testimony as to prior experience with drugs in flat packages, the police could have reasonably believed they had evidence before them. Our review of the record convinces us that the trial court was correct on this point.

Petitioner further argues, however, that the discovery of the folded packet containing phencyclidine was not inadvertent. This is so, petitioner maintains, because although the search warrant authorized only a search for marijuana, the trial court found:

> 6. Although the search warrant limited the search to marijuana, the officers conducted a wide open, general search for all controlled substances and drugs.

Finding of fact No. 6. It is petitioner's view that within this factual context the plain view doctrine cannot apply to justify the seizure of the drug phencyclidine because a general exploratory search for drugs must, of logical necessity, exclude a finding of inadvertent discovery.

In the situation presented by this case, we have difficulty discerning any difference between the "wide open" search and the search for marijuana specifically authorized by the warrant. Thus, the question becomes one of whether the officers exceeded the permissible scope and intensity of the search authorized by the warrant. *See Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 326, 60 L. Ed. 2d 920, 99 S. Ct. 2319 (1979); *see generally* 2 W. LaFave, *supra* § 4.10.

By its nature a search for marijuana permits a very thorough search. The police may look in drawers, boxes, and other places ordinarily secluded from view. Thus, there

seems in practical effect to be little objective difference between an authorized search for marijuana and the general search referred to in finding of fact No. 6. Wherever marijuana may be found, other drugs may be present as well. This circumstance was recognized by the trial judge himself in his oral opinion:

> This was pretty much a wide open, general search, in spite of the fact that the search warrant said that they were to search for marijuana; and my view then and my view now is that at least in the context of this case the subjective view of the officer is not that critical. It seems to me that if the officer in deed had a subjective view that he was within the warrant, and I conclude that a reasonable officer would not have that view or take that action, the officer's view that he's within the warrant doesn't help. Conversely, if the officer thinks that he's operating outside of the warrant but in fact I conclude that he's operating reasonably within the scope of the warrant, then I think the search is valid and that the evidence should be admitted. In other words, I think that we should apply an objective standard what a reasonable and competent officer would think he's right and conclusions he would draw and so forth as the situation then existed. . . .
>
> So applying the objective test we know that in a drug search that *you are entitled to look for small matters and to have a wide ranging search, because we know that drugs can be concealed almost anywhere* and it's obvious that they can be in fairly small contents; . . .

(Italics ours.)

■ While we agree that officers with a proper warrant may search "almost anywhere" for marijuana, the trial judge's view that the officers' subjective view of the search is irrelevant so long as they remain objectively within the scope of the search warrant is too broad. If the search warrant for marijuana is merely a "pretext" for a search for other drugs or even other kinds of objects, the search may be invalidated. *State v. Michaels,* 60 Wn.2d 638, 645, 374 P.2d 989 (1962); *State v. Dimmer,* 7 Wn. App. 31, 34, 497 P.2d 613 (1972). *See also State v. Daugherty,* 94 Wn.2d 263, 272, 616 P.2d 649 (1980).

Here, there was no evidence whatever that the police sought a search warrant for marijuana as a pretext to search for other controlled substances. Nor is there any showing that they anticipated finding other drugs. On the other hand, we would be blind to the realities of contemporary law enforcement practice if we did not realize that a policeman in the course of a valid search is entitled to keep his senses open to the possibility of contraband, weapons, or evidence of a crime. This recognition is at the core of the plain view doctrine. *Coolidge v. New Hampshire, supra* at 466; *Harris v. United States,* 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968); *State v. Dimmer, supra.* In this case, there is no allegation that the police were not allowed to be attentive to the possibility of other incriminating items during the course of the search.

Indeed, petitioner does not claim that the police exceeded the scope of the warrant when they viewed the shelf on which the paper packet lay. That shelf held marijuana and paraphernalia concededly subject to seizure. Thus, petitioner's only contention is that the officers were precluded from seizing any items which were not marijuana because all other items were beyond the scope of the search. Not only does this claim impair the plain view doctrine, it also would seem to mean that the officers could not seize the numerous items of marijuana paraphernalia, a seizure not contested by petitioner.

Assuming the officers did not exceed the scope of the warrant, is there any other basis for petitioner's claim that the discovery of the phencyclidine was not inadvertent?

The degree of expectation required to make a discovery "inadvertent" has not been clarified by either the Washington courts or the federal courts. One interpretation of the inadvertence rule holds that a discovery will not be inadvertent if the officers "knew" the evidence would be found. *United States v. Bolts,* 558 F.2d 316 (5th Cir. 1977), *cert. denied,* 439 U.S. 898, 58 L. Ed. 2d 246, 99 S. Ct. 262 (1978); Kalven, *The Supreme Court 1970 Term,* 85 Harv. L. Rev. 3, 244 n.35 (1971); Comment, *Criminal Procedure—"Inad-*

vertence": The Increasingly Vestigial Prong of the Plain View Doctrine, 10 Mem. L. Rev. 399, 401–02 (1980). This is a narrow interpretation which is of limited effect, since "knowing" evidence is present would be grounds for probable cause. In such circumstances, the police should obtain a warrant. See 85 Harv. L. Rev., supra at 244–45; State v. Dimmer, supra. The other view, expressed by the Court of Appeals in the present case, is that an "expectation" by officers, even if they lack probable cause, negates inadvertence. United States v. Davis, 461 F.2d 1026 (3d Cir. 1972); State v. Daugherty, supra.

We need not specify here what degree of expectation there must be to negate a finding of inadvertence, since the record fails to show that the officers either knew or expected that they would find other drugs in the course of this marijuana search. Standing alone, prior experience on the part of the police does not rise to the level of knowledge or even expectation that objects not named in the warrant will be found during a particular search.

In the absence of any showing that the search warrant was a pretext for a search for other drugs not based on probable cause, or that the police "knew" or "expected" they would find other controlled substances, we decline to hold that the seizure of the packet of phencyclidine in plain view violated petitioner's Fourth Amendment rights.

Affirmed.

BRACHTENBACH, C.J., and STAFFORD, HICKS, DORE, and DIMMICK, JJ., concur.

DOLLIVER, J. (dissenting)—Webster's Third New International Dictionary (1971), defines inadvertent as "1 : not turning the mind to a matter : heedless, negligent, inattentive . . . 2 : unintentional". The trial court found:

6. Although the search warrant limited the search to marijuana, the officers conducted a wide open, general search for all controlled substances and drugs.

If the police officers were conducting a wide open search

"for all controlled substances and drugs", it is simply an impossibility for the discovery of the drug phencyclidine to have been inadvertent.

The majority spends a good deal of time illuminating the obvious: that a search for marijuana is a "very thorough search" and that there is "little objective difference between an authorized search for marijuana and the general search referred to in finding of fact No. 6." Unless, however, the majority wishes to probe new frontiers in the business of lexicology, the "objective difference" between the general search for the drug authorized by the search warrant and the "general search" for all controlled substances and drugs is not relevant. What is relevant is the *intentionality* of those conducting the search. If the search was only for marijuana and in that general, wide ranging search other controlled substances and drugs were found, that discovery would be inadvertent. But if, as here, the unchallenged finding of the court is that the search was not just for marijuana but for all controlled substances and drugs, then there can be no inadvertence.

The majority writes, "[W]e would be blind to the realities of contemporary law enforcement practice if we did not realize that a policeman in the course of a valid search is entitled to keep his senses open to the possibility of contraband, weapons, or evidence of a crime." This is certainly so. But that is not what happened here. In contrast to the commendable vigilant police work applauded by the majority, here the police entered not searching for marijuana and merely keeping alert for other contraband but rather with the initial intent to search for all contraband. The discovery of phencyclidine was not from that serendipitous inadvertence which often accompanies thorough police work. The discovery came from the kind of police work which flouts the limitations of the search warrant and the Fourth Amendment, limitations which were, until now, the mandate of this court.

I dissent.

ROSELLINI and UTTER, JJ., concur with DOLLIVER, J.

Reconsideration denied December 7, 1981.