[No. 498-3. Division Three. March 27, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. LEO ERNEST ALECK, *Appellant*.

*Dennis A. Dellwo* and *Dellwo, Rudolf & Schroeder,* for appellant (appointed counsel for appeal).

*Charles Byrd, Prosecuting Attorney,* for respondent.

McINTURFF, J.—Defendant appeals from a verdict of guilty of two counts of kidnapping in the first degree, two counts of first-degree assault, and one count of illegal possession of a weapon.

About midnight on April 10, 1971, defendant, while driving his vehicle on the state highway between Omak and Okanogan, was stopped by Washington State Troopers Brackins and Cook. Defendant failed to successfully perform several tests; was arrested for driving while under the influence of alcohol; was checked for a weapon and then placed in the rear seat of the patrol car for a trip to the Okanogan County jail.

After traveling a short distance defendant displayed a .357 Magnum pistol and informed the troopers that he was now in charge. He directed the troopers to take him to his van-type vehicle, which had been towed from the scene of the arrest. Upon arrival, defendant ordered Trooper Cook to retrieve a rifle and ammunition belt from the rear of his vehicle. Defendant then ordered the officers to drive him to Mallott, Washington. During the trip, and after repeated threats to both troopers, defendant said: "Take that, cop," and discharged the pistol in the vehicle but neither trooper was hit. The patrol car was driven off the road immediately; both troopers eventually disarmed the defendant.

Defendant entered a special plea of not guilty by reason of insanity and, prior to trial, defendant moved to strike the jury panel on the ground that the jury panel selection constituted discriminatory exclusion of members of the Indian race (defendant being a member of the Yakima Indian Tribe). During the hearing on this motion, the Okanogan County Clerk testified regarding the method used in selec-

tion of juries; it was apparent this method was in substantial compliance, if not in fact strict compliance with RCW 2.36.060.[1] Defendant's motion was denied.

[1]RCW 2.36.060 provides:

"Petit jury, how drawn—Jury list—Procedure. The judge or judges of the superior court of each county shall divide the county into not less than three jury districts, following the lines of voting precincts and arranging the districts in such manner that the population in each district shall be as nearly equal as may be, and the fixing of the boundaries of the district shall be evidenced by an order made by the court and entered upon its records.

"For the purposes of this section the clerk or comptroller of each incorporated city or town designated as registrar of voters by Title 29 RCW, except the registrars of voters in the city or town which is the county seat of any county, shall prepare annually from the original registration files of voters of such city or town a list according to a procedure or formula established by the judge or judges of the superior court for the selection of prospective jurors from the original registration files of voters of the city or town which is the county seat of the county, and from the original registration files of rural precincts of voters. The list shall be divided into the respective voting precincts and shall specify with respect to each name appearing on said list all the information upon the original registration card of each qualified voter, and the said clerk or comptroller shall certify and file such list with the county auditor of his county on or before the first day of June of each year.

"During the month of July of each year, the judge or judges of the superior court for each county shall select by lot, in the manner hereinafter set forth, from said lists and from the original registration files of voters of the city or town which is the county seat of the county, and from the original registration files of rural precincts of voters in the office of the county auditor of said county, and enter in a book kept for that purpose and shall certify and file with the county clerk a jury list containing the names of a sufficient number of qualified persons to serve as jurors until the first day of August of the next calendar year. The judge or judges may call (but are not required to call) one or more electors from each or any of the jury districts to advise in the selection. Each such elector shall receive for his services the sum of five dollars per day and the mileage allowed sheriffs, upon vouchers approved by the judge or presiding judge of the county. In making the selection of jurors the judge or judges shall be bound by the list of names filed with the county clerk as in this section provided. At any time and from time to time the judges may add to the jury list in the same manner, and when this is done a certified list of the names added shall be filed with the clerk.

"The number of persons selected from the several jury districts shall be as nearly as possible in proportion to the number of names on the list certified and filed with the county clerk for the several districts.

Defendant first argues the trial court erred in upholding the jury selection procedure utilized, in that this method of selection constitutes discriminatory exclusion of members of the Indian race.

■ Purposeful discrimination in the selection of a jury panel founded upon race must be proven. *State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967); *State v. Akridge,* 3 Wn. App. 274, 474 P.2d 114 (1970); *Swain v. Alabama,* 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965). The fact that the jury panel contains no non-Caucasian members is insufficient in itself to show discrimination. *State v. Green, supra; State v. Akridge, supra.*

■ In the case of *State v. Finlayson,* 69 Wn.2d 155, 157, 417 P.2d 624 (1966), the court stated:

Having determined that a fair and impartial jury was secured in *State v. Phillips,* 65 Wash. 324, 327, 118 Pac. 43, we held that ". . . 'if the prisoner has been tried by an impartial jury, it would be nonsense to grant a new trial or a *venire de novo . . .* in order that he might be again tried by another impartial jury.' 1 Thompson, Trials, § 120."

It is therefor clear that where there is substantial compliance with the statute, as there was in the case before

---

Any woman who upon being listed upon the list as in this section provided shall claim her exemption to serve as a juror, shall not be listed in the preparation of the list of jurors.

"The county clerk shall provide boxes sufficient in number to correspond with the number of jury districts fixed by the court, and numbered to correspond therewith, and having written the names appearing in the jury list for each district upon slips of paper, which shall be similar in size, quality of paper, and writing, shall deposit such slips in the jury box of the proper district. At the time of the drawing of names for any venire there must be in the jury boxes at least five times as many names as the number of names to be drawn.

"The jury list shall be selected by the judge or judges in the following manner:

"(1) The selection of precincts from which names are to be selected shall be by lot;

"(2) The number of jurors selected from each precinct selected under subsection (1) shall, insofar as practicable, be equal;

"(3) The selection of prospective jurors within a given precinct shall be by selection of names in a given and identical numbered sequence based upon the number of jurors to be selected therefrom."

us, and the jury selected is fair and impartial, a defendant's right to a fair trial is protected.

The jury selection procedure utilized in the present case complied with the statutory requirements of RCW 2.36.060. There is no showing by defendant of discrimination, let alone purposeful discrimination; nor is there any showing that the jury selected was not fair and impartial, or that defendant was denied his right to a fair trial. We find no error.

 Defendant next urges he was denied both a fair trial and his right of appeal by the incompetence of his trial attorney. Defendant cites several instances in which his attorney could have objected to the introduction of evidence, and could have excepted to specific instructions. In *State v. Silvers*, 70 Wn.2d 430, 433-34, 423 P.2d 539 (1967), the court stated:

> Appellant next asserts that the attorney whom he had employed was incompetent and that because of his attorney's incompetence he was denied a fair trial. We do not agree. An attorney who has been admitted to practice law in the state of Washington is presumed to be of sufficient skill and learning to adequately defend a person accused of a crime. *State v. Graeber*, 46 Wn.2d 602, 283 P.2d 974 (1955). . . .
>
> In *State v. Mode*, 57 Wn.2d 829, 833, 360 P.2d 159 (1961), the court said: "Mistakes or errors of judgment do not establish the violation of a constitutional right." The constitution guarantees a defendant a fair trial, not a perfect trial. *State v. Willis*, 67 Wn.2d 681, 409 P.2d 669 (1966).

From the record, defendant's allegations of incompetence of his trial attorney are at most errors of judgment but did not deny defendant a fair trial. We find no error.

 Defendant next contends that the trial court erred in giving instruction No. 15:

> You are instructed that the word "reward" as used in the kidnapping counts need not be money or thing of pecuniary value but may be satisfaction of mental or emotional condition such as vengeance.

At the time the instruction was given there was no objection to the giving of this instruction, nor was an exception made to the giving of the instruction. Since no exception was taken to the instruction and the defendant proposed no instruction, this court will not consider the claimed error. As stated in *State v. Dean,* 70 Wn.2d 66, 68-69, 422 P.2d 311 (1966), the court stated:

> This court has held time and again that—except under the most grave and far-reaching circumstances, when to do otherwise would result in a palpable miscarriage of justice—it will not review claims of error as to instructions given or refused unless the trial court has been given timely opportunity to consider and correct the alleged error. *State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966).

Although we do not agree with the instruction,[2] we do not find that a refusal to consider the claimed error would result in a palpable miscarriage of justice. The undisputed facts in this case are very similar to *State v. Andre,* 195 Wash. 221, 80 P.2d 553 (1938), where defendant forced a cab driver, by placing a knife against his neck, to take him to Portland, Oregon. In relation to the term "reward," the

---

[2]Our kidnapping statute, RCW 9.52.010, in pertinent part provides:

"Every person who shall wilfully,

(1) Seize, confine or inveigle another with intent to cause him without authority of law to be secretly confined or imprisoned, or in any way held to service with the intent to extort or obtain money or *reward for his release or disposition,* shall be guilty of kidnaping in the first degree, . . .

(Italics ours.)

As stated by counsel on appeal for the defendant, *State v. Berry,* 200 Wash. 495, 93 P.2d 782 (1939), is not strong support for the construction that reward under the first-degree kidnapping statute need not be a money or pecuniary reward, but could be the satisfaction of a mental or emotional condition. A majority of the court did not agree with this particular finding in the case; one member of the court concurred in the result, but specifically did not accept the position noted above.

The statute does not lend itself to interpretation of the word "reward" as including the satisfaction of a mental or emotional condition, because, following its use in the statute is the phrase: "for his release or disposition," which seems to contemplate something less abstract than emotional gratification.

court, at page 225, quoting from *Gooch v. United States,* 297 U.S. 124, 80 L. Ed. 522, 56 S. Ct. 395 (1935), stated: " 'Generally, reward implies something given in return for good or evil done or received.' " And at page 225-26, said:

> [T]he word "reward" is broad enough to include within its meaning a benefit that will accrue to the transgressor by kidnaping an officer of the law to prevent him from making an arrest. [Or, as in this case, custodial detention.] If a benefit of that kind is included within the word "reward," it necessarily follows that the benefit which the appellant in this case would receive by forcing Jones to assist him in his flight as a fugitive from justice would likewise be within the meaning of that term.

To escape physical arrest, or to attempt to do so, as the defendant did here, is within the broad definition of "reward."

Judgment of the trial court is affirmed.

MUNSON, J., and EVANS, J. Pro Tem., concur.

Petition for rehearing denied May 9, 1974.

Review pending by Supreme Court August 20, 1974.