IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36281-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD VASQUEZ JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Richard Vasquez appeals his convictions and life

sentence. We affirm, but remand to strike the $100 DNA[1] collection fee.

FACTS

In September 2014, Richard Vasquez asked a friend, Lawrence Quiroz, if he had

any pistols for use in a robbery. He also asked Quiroz if he would be a driver for him and

another individual, Samuel Crafton-Jones. Vasquez told Quiroz they were targeting an

older couple because they were less likely to fight back. Quiroz declined to participate in

Vasquez's plan.

---

[1] Deoxyribonucleic acid.

On the morning of October 1, 2014, Kristen Fork and Robert Miller, an older couple, were inside their home. At about 6:15 a.m., Miller heard a knock on his door and opened it. A man, later identified as Vasquez, claimed his car was overheating. Miller told Vasquez to wait there, and he shut the door. Miller then went to the master bedroom and told Fork that something was not right. When he returned to speak with Vasquez, Miller saw Vasquez and a man, later identified as Samuel Crafton-Jones, inside the home. Crafton-Jones held a gun to Miller's head and demanded gold from him. He threatened he would kill both Miller and Fork.

Vasquez and Crafton-Jones tied up Miller and Fork and continued to threaten the couple. Crafton-Jones pistol-whipped Miller and demanded the combination to his safe. When Miller had trouble opening the safe, Crafton-Jones kicked Miller in the face and again threatened to kill him. When Miller opened the safe, Crafton-Jones saw there were only papers in the safe and again threatened to kill Miller unless he gave them gold.

Fork used a ruse to get Vasquez and Crafton-Jones to break their line of sight with her. She then escaped out a window. Vasquez chased her outside and Fork ran to her front yard yelling for help. Vasquez tried to get her to stop yelling and hit her two or three times. When that did not quiet her, he went back inside and told Crafton-Jones what was happening. Both of them then went outside. Crafton-Jones hit Fork with his gun and

told her to shut up. Both men kicked Fork to try to stop her from yelling. The assault

shattered Fork's dentures and cheekbone, and caused profuse bleeding from her mouth

and face resulting in approximately 65 stitches.

Fork's yelling attracted a neighbor, who came outside. When the two men saw the

neighbor, they ran to a brown van and fled. Fork saw the van's license plate number and

wrote it down.

Fork reported to 911 that she and Miller were the victims of a home invasion

robbery and violent assault.[2] She said her attackers were armed and had fled in a brown

van, license plate AFS8595. She said "she believed that the suspects were Hispanic

males in their 30s." Clerk's Papers (CP) at 141. Dispatch ran the plate number and

quickly advised officers of the owner of the van and the owner's address.

Within minutes, Officers Terryl Way and Renard Edwards arrived at the owner's

address and located the van. The officers were familiar with the address because the

residence was frequented by drug users. Tree cover made the area darker in the early

morning, and the officers needed flashlights to see. Using a flashlight, the officers saw a

black firearm holster on the driver's side floorboard. Officer Edwards felt the van's

---

[2] Because Vasquez raises a suppression issue, the facts in this and the next three
paragraphs come from the trial court's findings in its order denying suppression. The
evidence at trial and the evidence at the suppression hearing differ in some respects.

3

hood, and it was still warm. The officers then saw two men, Vasquez and Crafton-Jones, walking from the rear of the residence less than 30 feet away. Officer Edwards, with his firearm in the low ready position, identified himself as a police officer, and ordered the suspects to the ground because he believed they possibly were the two who attacked Fork and Miller. Vasquez complied immediately, but Crafton-Jones hesitated and appeared he might run. After ordering Crafton-Jones to the ground several times, he slowly complied.

The officer patted down both suspects for officer safety. During the pat down, the officers found a black stun gun in Crafton-Jones's pants pocket. They questioned the suspects about whether either had driven the van. Vasquez began sweating profusely and said "'they had been tweaking all night at a graveyard.'" CP at 144.

The officers detained the two suspects so Miller could be brought to them for a showup identification. Within minutes, Miller arrived and positively identified both men as the robbers.

The officers recovered keys and jewelry belonging to Miller and Fork in the back yard of the address where the van was parked. Investigators found a cap and a glove at the burgled home. Vasquez's DNA was found on the cap, and Crafton-Jones's DNA was found on the glove.

4

By amended information, the State charged Vasquez with one count of first degree burglary, two counts of first degree kidnapping, two counts of first degree robbery, one count of first degree assault, one count of second degree assault, and one count of first degree unlawful possession of a firearm. Before trial, Vasquez moved to suppress the showup identification and all resultantly discovered evidence. He argued that the police did not have reasonable suspicion to seize him because neither he nor Crafton-Jones matched the description of the robbery suspects. Specifically, Vasquez, although Hispanic, was 48 years old and Crafton-Jones, although 38 years old, is white. The court held a CrR 3.6 hearing, denied the motion, and later entered findings and conclusions. The case proceeded to trial.

With respect to the kidnapping counts, the second element of the to-convict instruction read:

> (2)  That the defendant or an accomplice abducted that person with intent
> (a)  to hold the person for ransom or reward, or
> (b)  to hold the person as a shield or hostage, or
> (c)  to facilitate the commission of First Degree Burglary and/or First Degree Robbery or flight thereafter[ . . . .]

CP at 116. The instruction explained to the jury that it need not be unanimous as to which of the three alternatives is proved beyond a reasonable doubt, as long as each juror finds that one alternative has been proved beyond a reasonable doubt.

5

The jury found Vasquez guilty as charged. The trial court determined that Vasquez qualified as a persistent offender and sentenced him to life imprisonment without the possibility of parole. The determination was based in part on Vasquez's first degree robbery conviction when he was 16 years old. The trial court also ordered Vasquez to pay a $100 DNA collection fee and found him indigent for purposes of appeal.

Vasquez timely appealed.

ANALYSIS

UNANIMOUS JURY VERDICT

Vasquez contends his right to a unanimous jury verdict was violated. He argues there was not sufficient evidence to support each of the alternative means charged for his kidnapping charge. We disagree.

Under article I, section 21 of the Washington Constitution, criminal defendants are entitled to a unanimous jury verdict. *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). This right extends to the right to unanimity of means if the charge includes alternative means of committing the offense. *Id.* This is satisfied if there is sufficient evidence to support each of the alternative means charged. *Id.* When reviewing a challenge to sufficiency of the evidence, this court looks to whether the evidence, viewed

6

in the light most favorable to the State, could justify a rational trier of fact finding the defendant guilty, beyond a reasonable doubt, as to each of the alternative means charged. *State v. Armstrong*, 188 Wn.2d 333, 341, 394 P.3d 373 (2017).

Alternative means crimes are those that categorize distinct acts that amount to the same crime. *State v. Harrington*, 181 Wn. App. 805, 818, 333 P.3d 410 (2014). RCW 9A.40.020, which defines first degree kidnapping, provides:

> (1)　　A person is guilty of kidnapping in the first degree if he or she intentionally abducts another person with intent:
> 　　　　(a) To hold him or her for ransom or reward, or as a shield or hostage; or
> 　　　　(b) To facilitate commission of any felony or flight thereafter; or
> 　　　　(c) To inflict bodily injury on him or her; or
> 　　　　(d) To inflict extreme mental distress on him, her, or a third person; or
> 　　　　(e) To interfere with the performance of any governmental function.

In *Harrington*, we held that these five subparts are distinct specific intentions that represent five alternative means for proving first degree kidnapping. 181 Wn. App. at 818.

Nevertheless, the trial court's instruction separated subpart (a) into two means, yet properly listed subpart (b) as one mean. And as noted previously, the instruction told the jurors they did not have to be unanimous on which of the three alternatives was proved, as long as each juror found that at least one alternative had been proved beyond a reasonable

7

doubt. For this reason, the law of the case doctrine requires us to analyze the factual sufficiency of each of these three alternatives. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

"Abduct" includes restraining a person by use or threat of use of deadly force. RCW 9A.40.010(1). Here, Vasquez and Crafton-Jones not only tied up the older couple, they threatened to kill them if they did not say where the gold was. The tying up did not prevent the couple from leaving. The threat of deadly force did. Vasquez does not challenge that he and Crafton-Jones abducted the older couple.

Vasquez also does not challenge that there was sufficient evidence that he and Crafton-Jones abducted Miller and Fork to facilitate burglary and robbery. For this reason, we focus on whether there was sufficient evidence to support the remaining two alternates—intent to "hold the person for ransom or reward" and intent to "hold the person as a shield or hostage."

*Hold the person for ransom or reward*

"Reward" is a broad term and implies something given in return for evil or good. *State v. Aleck*, 10 Wn. App. 796, 802, 520 P.2d 645 (1974). Here, Vasquez threatened to kill the older couple if they did not give him and Crafton-Jones gold. Giving gold in return for a threat satisfies the meaning of "reward."

8

*Holding a person as a shield or hostage*

A "hostage" is someone held as security for the performance or forbearance of some act by a third person. *State v. Garcia*, 179 Wn.2d 828, 839, 318 P.3d 266 (2014). The person held as a hostage must be held to coerce someone else to act. *Id.* at 840.

There is no direct evidence that Vasquez or his accomplice held Miller to secure gold from Fork or held Fork to secure gold from Miller. Nevertheless, circumstantial evidence is entitled to as much weight as direct evidence. *State v. Dollarhyde*, 9 Wn. App. 2d 351, 355, 444 P.3d 619 (2019). A trier of fact could have found that Crafton-Jones's threats to kill Miller coerced Fork to find gold or other valuables for her attackers. That is, Fork was coerced to find valuables not simply for her own survival but for Miller's. The evidence was sufficient for a jury to find that Miller was being held as a hostage to coerce Fork.

SUPPRESSION OF EVIDENCE

Vasquez contends the trial court erred by denying his motion to suppress because the arresting officers lacked reasonable suspicion to stop him. We disagree.

Seizures, except in very few limited circumstances, must be based on probable cause. *In re Armed Robbery*, 99 Wn.2d 106, 109, 659 P.2d 1092 (1983). One exception

is an investigative *Terry*[3] stop. *State v. Smith*, 145 Wn. App. 268, 275, 187 P.3d 768 (2008). "*Terry* requires a reasonable, articulable suspicion, based on specific, objective facts, that the person seized has committed or is about to commit a crime." *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002). A *Terry* stop must be justified at its inception. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

Denial of a suppression motion is first reviewed to determine whether substantial evidence supports the findings of fact and then whether those findings support the trial court's conclusions of law. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). Substantial evidence exists where the evidence is sufficient to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Conclusions of law are reviewed de novo. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

Vasquez assigns error to multiple findings of fact. However, he presents an argument for only one of these assignments of error. An appellant waives an assignment of error when he presents no argument in support of the assigned error. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). The one preserved

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

assignment of error relates to a portion of finding of fact 19—that Vasquez and Crafton-Jones "matched the general suspect descriptions given by the victims." CP at 143.

Fork "believed that the suspects were Hispanic males in their 30s." CP at 141. The record from the suppression hearing confirms this is what the officers were told. Vasquez is a Hispanic male and was 48 at the time and Crafton-Jones is a white male and was 38 at the time. One officer testified he immediately recognized Crafton-Jones and knew he was white. He also testified that he was unsure of the second man's race. If their physical descriptions were the only reason the officers stopped the pair, Vasquez's argument would be persuasive. However, additional evidence supported the *Terry* stop.

Here, the officers knew there was a home robbery committed by two suspects armed with a pistol and that the suspects fled in a van. Dispatch learned the license plate number of the van and advised the officers of the address associated with the van. The officers drove to this address, arrived within 10 minutes of the 911 call, and found the van parked in the driveway, still warm to the touch.

The officers peered into the van and saw an empty gun holster. They then saw two men walking from behind the house about 30 feet away. One officer immediately recognized Crafton-Jones, knew that Jones was white, but was unsure of the second

11

man's race. This was the inception, from which we must determine if the requisites of a *Terry* stop were met.

Evaluating the reasonableness of the police action and the extent of the intrusion, each case must be considered in light of the particular circumstances facing the law enforcement officer. *State v. Lesnick*, 84 Wn.2d 940, 944, 530 P.2d 243 (1975). No single rule can be fashioned to meet every conceivable confrontation between the police and a citizen. *Id.* The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. *State v. Lee*, 147 Wn. App. 912, 917, 199 P.3d 445 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)).

Faced with the decision of ordering the pair to stop or allowing the two to walk away, the officers made the only reasonable choice. The van had not been parked long and the suspects were likely near. Because the pair emerged from behind the house early in the morning, it was reasonable to believe that the two were associated with the house and thus the van. And even though Crafton-Jones is white, the physical description of the suspects could have been of Vasquez and a second Hispanic man. Crafton-Jones could have been merely the driver and never in the burgled home. We conclude that the officers had a reasonable articulable suspicion that Vasquez—and perhaps Crafton-Jones, too—

was involved in the robbery.  Under *Terry*, the officers were permitted to stop Vasquez and briefly detain him in order to arrange a showup identification.

CATEGORICAL BAR OF A JUVENILE CONVICTION AS A PREDICATE OFFENSE

Vasquez argues, under article I, section 14 of the Washington Constitution, his conviction when he was 16 years old is categorically barred from qualifying as a "strike" offense for his current sentence.  The State briefly responds that we recently decided this issue against Vasquez's argument in *State v. Teas*, 10 Wn. App. 2d 111, 447 P.3d 606 (2019), *review denied*, 195 Wn.2d 1008 (2020).

In *Teas*, Division Two of this court squarely addressed the issue raised by Vasquez and decided that issue against his argument.  Nevertheless, "horizontal stare decisis" does not apply between or among the divisions of the Courts of Appeals.  *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 150-54, 410 P.3d 1133 (2018).  And while we are not bound by a decision of a sister division, we should give respectful consideration to it.  *Id.* at 154.

We have examined *Teas* and are of the opinion that Division Two's decision is clearly correct and we will follow it.  In rejecting the defendant's categorical bar argument, *Teas* persuasively concluded:

"The purpose of the POAA[4] is the segregation of persistent offenders from the rest of society, generally deterring others." *State v. Hart*, 188 Wn. App. 453, 461, 353 P.3d 253 (2015). As the Tenth Circuit has explained, "Unlike defendants who receive severe penalties for juvenile offenses . . . recidivists have been given an opportunity to demonstrate rehabilitation, but have elected to continue a course of illegal conduct." *United States v. Orona*, 724 F.3d 1297, 1308 (10th Cir.), *cert. denied*, 571 U.S. 1034 (2013). Punishing an adult for continuing to commit violent crimes after being given the chance for rehabilitation supports the penological goal of separating repeat offenders from the rest of society.

Our courts have recognized that "children are less criminally culpable than adults, and the characteristics of youth do not support the penological goals of a life without parole sentence." [State v.] *Bassett*, 192 Wn.2d [67,] 90[, 428 P.3d 343 (2018)]. However, Teas is not a juvenile being punished for a crime he committed as a juvenile. He was 39 years old when he raped R.C. by forcible compulsion. Therefore, the mitigating factors of youth were not applicable when he was sentenced for this crime.

10 Wn. App. 2d at 134-35.

Here, Vasquez was 48 years old when he and his accomplice robbed an elderly couple, repeatedly threatened to kill them, and brutally assaulted the woman. The mitigating factors of youth were not applicable when he was sentenced for these crimes.

LEGAL FINANCIAL OBLIGATIONS (LFOs)

Vasquez contends the trial court erred in imposing a $100 DNA collection fee. He cites *State v. Ramirez*, 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018), and argues the LFO

---

[4] Persistent Offender Accountability Act of the Sentencing Reform Act of 1981, chapter 9.94A RCW.

14

amendments contained in Engrossed Second Substitute House Bill 1783, 65th Leg., Reg. Sess. (Wash. 2018) apply to his appeal. Then citing RCW 10.01.160(3), one of these amendments, he argues a trial court may no longer impose discretionary LFOs on indigent defendants. He concludes we should vacate the order requiring payment of the collection fee because he was indigent at sentencing and *he previously paid the fee*. We disagree a bit with Vasquez's argument, but agree he is entitled to relief.

Under RCW 43.43.7541, every sentence imposed for a crime that requires DNA collection must include a $100 collection fee unless the State has previously collected the offender's DNA. Here, the State concedes that it had previously collected Vasquez's DNA. For this reason, and not because Vasquez had previously paid the fee, the fee is only discretionary.

RCW 10.01.160(3) prohibits courts from imposing discretionary costs on defendants who were indigent at the time of sentencing. Vasquez was indigent at the time of his sentence. We, therefore, remand with instructions for the trial court to strike the DNA collection fee.

No. 36281-7-III
*State v. Vasquez*

Affirmed, but remanded to strike DNA collection fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Pennell, C.J.                                    Korsmo, J.