MADSEN, J. (dissenting)
¶18 I disagree with the majority that the seizure of David Morgan's clothes falls under the plain view exception to the search warrant requirement. Under the plain view doctrine, it must be immediately apparent to the seizing officer that evidence he has discovered is associated with criminal activity. The majority's holding here divorces the observations of the seizing officer from the seizure. Instead, the majority says that if an officer has information from a civilian witness who has observed evidence that may indicate criminal activity when that evidence was at a different location, a different officer, who was not informed that evidence was incriminating and who did not himself observe anything incriminating, may seize that evidence in a different location under the plain view doctrine-a doctrine meant solely to allow law enforcement an exception to obtain evidence without a warrant when it is obvious to the seizing officer that the evidence is associated with a crime. While the chain of events here clearly supports issuance of a warrant, it certainly does not fit within any of the "jealously and carefully drawn exceptions" to the warrant requirement.
¶19 In reaching this unprecedented application of the plain view doctrine, the majority, sub silentio, imports the "fellow officer" rule, which allows officers to make warrantless arrests on the strength of collective information.
*374 Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 91 S. Ct. 1031, 28 L.Ed.2d 306 (1971). This rule has never been imported into the "plain view" exception for obvious reasons-it cannot be plain to the seizing officer that he is viewing incriminating evidence unless he observes it and is *141 himself aware of the surrounding facts and circumstances. Because the majority severely undermines the search warrant requirement under article I, section 7 of our constitution, which has long been held to provide greater protections than the Fourth Amendment, I respectfully dissent. WASH. CONST. art. I, § 7 ; U.S. CONST. amend. IV.
Discussion
¶20 Our constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Generally, an officer acts under authority of law when executing a search and seizure under a valid warrant. State v. Miles, 160 Wash.2d 236, 244, 156 P.3d 864 (2007). Warrants must be supported by probable cause and describe the places to be searched or persons or things to be seized with particularity. State v. Perrone, 119 Wash.2d 538, 545, 834 P.2d 611 (1992). This is, of course, to prevent a " 'general, exploratory rummaging in a person's belongings.' " Id. (internal quotations omitted) (quoting Andresen v. Maryland, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L.Ed.2d 627 (1976) ). It is well settled that a warrantless search is per se unreasonable unless it falls under one of the " 'jealously and carefully drawn exceptions.' " State v. Hatchie, 161 Wash.2d 390, 395, 166 P.3d 698 (2007) (internal quotation marks omitted) (quoting State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996) ). The plain view doctrine is one of those exceptions.
¶21 A plain view search is legal when officers (1) have a valid justification to be in an otherwise protected area and (2) are immediately able to recognize the evidence they see is associated with criminal activity. Id. at 395, 166 P.3d 698 (citing *375 State v. Myers, 117 Wash.2d 332, 346, 815 P.2d 761 (1991) ). An object is immediately apparent under the second prong of a plain view search when, "considering the surrounding facts and circumstances, the police can reasonably conclude they have evidence before them." State v. Lair, 95 Wash.2d 706, 716, 630 P.2d 427 (1981). "In other words, police have immediate knowledge if the officers have a reasonable belief that evidence is present." State v. Munoz Garcia, 140 Wash. App. 609, 625, 166 P.3d 848 (2007) (emphasis added); see also State v. Kennedy, 107 Wash.2d 1, 10, 726 P.2d 445 (1986) (it is not an unlawful search and seizure when an officer, observing from a vantage point where he can legally be present, immediately recognizes an object as incriminating evidence). Probable cause is required to satisfy the immediate recognition prong of the plain view doctrine. Statev.Hudson, 124 Wash.2d 107, 118, 874 P.2d 160 (1994) (citing Arizona v. Hicks, 480 U.S. 321, 326, 107 S. Ct. 1149, 94 L.Ed.2d 347 (1987) ).
¶22 In this case, the officer who seized the clothing, Officer Christopher Breault, was initially dispatched to Morgan's hospital room to "give medical updates to Sergeant [Curtis] Zatylny" and to find more information about a possible missing child. 1 Verbatim Report of Proceedings (Feb. 4, 2016) at 115. At some point, Sergeant Zatylny ordered Officer Breault to seize Morgan's clothes as evidence. After going in and out of Morgan's hospital room, Officer Breault noticed Morgan's clothing had been placed "in several plastic bags that the hospital had provided and then placed on the back counter of the ... hospital room." Id. at 151. The bags had a hospital logo on it but otherwise "were just regular plastic bags that you could get at a store." Id. at 158.
¶23 The first step in our analysis must be a recognition that Morgan's clothing is a private affair and that he has an expectation that his privacy in the clothing is not disturbed without a warrant. Next, it is important to recognize that clothing is not inherently incriminating. Here, Officer *376 Breault believed the bags he seized contained Morgan's clothing, but he did not observe anything about the clothing that could be described as incriminating. To justify the seizure, the State cites two cases it argues support the position that "surrounding facts and circumstances" in the context of plain view means any and all information that any police officer may know related to the investigation. See Suppl. Br. of Pet'r at 10-11. While the majority agrees with this broad reading of a "jealously and carefully drawn exception," those cases do not actually broaden the narrowly drawn plain view *142 exception in the way the majority attempts to do here. In State v. Alger, a sleeping bag was seized under the plain view doctrine as evidence of statutory rape. 31 Wash. App. 244, 640 P.2d 44 (1982). But the officers who seized the evidence were themselves "acquainted with the details of the crime." Id. at 247, 640 P.2d 44. They were informed that sexual relations between the defendant and the victim occurred on a sleeping bag while she was on her menstrual cycle. Id. at 246, 640 P.2d 44. The sleeping bag was seized after it was clearly visible from their vantage point near the front door, based on the surrounding facts and circumstances known to the officers at the time those officers seized the evidence. Similarly, in State v. Weller, officers were called in to assist on a wellness check after a Child Protective Services investigator interviewed the defendant's children for possible abuse. 185 Wash. App. 913, 344 P.3d 695 (2015). The officers there interviewed two of the children who described being beaten with a board. Id. at 919, 344 P.3d 695. When the officers moved to the garage for greater privacy, the officers discovered a board that the children later indicated was used for their beatings. Id. The board-which the officers observed had a long groove in it and had discoloration that appeared to be dried blood-was seized by the officers. In both Alger and Weller , the seizing officer was aware of the "surrounding facts and circumstances" that justified the warrantless seizure of evidence.
¶24 Here, that is not the case. Officer Breault never testified to smelling any gasoline in the room or near the *377 plastic bags, nor did he state he observed any blood on Morgan's clothing through the plastic bags.[1] Indeed, the officer's description of the plastic bags suggests the clothing was not observable through the bags at all. Moreover, Officer Breault was not there to investigate any possible crime committed by Morgan. His only purpose for being there was to observe Morgan and to determine the location of the child who may have had a connection to the events. While firefighters and paramedics observed that the clothes belonging to Morgan's ex-wife, Brenda, smelled like gasoline in the ambulance, as did Morgan's clothing, all of that information was from a non-law-enforcement source and was relayed only to Sergeant Zatylny. Sergeant Zatylny himself did not notice any evidence of gasoline or other incriminating evidence when he responded to the residential fire. Crucially, none of the information regarding Morgan's or Brenda's clothing was relayed to Officer Breault. To discover that evidence, Officer Breault would have had to manipulate the bag's contents to determine whether the clothing actually contained incriminating evidence. But doing so would undoubtedly be an unlawful seizure. See State v. Johnson , 104 Wash. App. 489, 501-02, 17 P.3d 3 (2001) (discussing Hicks , 480 U.S. at 328-29, 107 S.Ct. 1149 (manipulating stereo equipment that an officer reasonably suspects may be incriminating evidence to determine the serial number, which would give the officer probable cause, constitutes an unlawful search under the plain view doctrine)).
¶25 While we have generally recognized that "a policeman in the course of a valid search is entitled to keep his senses open to the possibility of ... evidence of a crime," Lair, 95 Wash.2d at 719, 630 P.2d 427, we have never suggested knowledge obtained by one officer may be imputed to the seizing officer, who is completely unaware of the facts and circumstances leading up to the seizure based on "plain view."
*378 Indeed, we have recognized only that a warrantless arrest, not a warrantless search and seizure, may be executed based on the cumulative knowledge possessed by a team of officers under the "fellow officer" rule. See State v. Bravo-Ortega, 177 Wash.2d 116, 297 P.3d 57 (2013). But to fall under the "fellow officer" rule, the information supplied must be from a law enforcement agency. See State v. Gaddy, 152 Wash.2d 64, 70-71, 93 P.3d 872 (2004). Here, the information obtained by the police came from first responders on the scene who were non-law-enforcement sources. Consequently, the officer's warrantless seizure could not fall under the fellow officer rule even if it were applied here.
*143 ¶26 In essence, the majority's holding that Sergeant Zatylny directing Officer Breault to collect Morgan's clothing falls under the plain view exception is really an "ends justify the means" argument since Officer Breault saw nothing to justify a plain view seizure. Importantly, Sergeant Zatylny was not present at Morgan's hospital room to perform a plain view seizure of the clothing. Sergeant Zatylny had more than enough information to obtain a warrant to collect Morgan's clothing. There was no concern that obtaining a warrant here would "be a needless inconvenience [or] dangerous-to the evidence or to the police themselves." Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality portion). Given the facts and circumstances of the investigation, a telephonic warrant would have been easily obtainable, should have been obtained by police here, and, more importantly, is what our constitution required.
Conclusion
¶27 Clothing, without more, is not inherently incriminating evidence. The officer observing and seizing evidence under plain view, must be aware of the surrounding facts and circumstances to have probable cause justifying the warrantless seizure. Because the officer here was directed *379 only to observe, gain information about a missing child, and, later, collect Morgan's clothing as evidence without knowing anything about a criminal investigation, the plain view exception to a warrant is not met. The majority's holding unnecessarily broadens our plain view doctrine and undermines the search warrant requirement under article I, section 7 of the Washington State Constitution. Probable cause to justify the warrantless seizure by the seizing officer was not met, and as such, I respectfully dissent.
Gordon McCloud, J.

At most, Officer Breault noticed and later seized a utility knife with some dried blood near the bag of clothing. But Morgan does not dispute the seizure of the utility knife.