# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55802-5-II |
| Respondent, | |
| v. | |
| JUAN ANTONIO VALDIVIA SOTO, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—Police executed a search warrant at Juan Antonio Valdivia Soto's residence and found large amounts of methamphetamine and cocaine, scales, plastic packaging materials, and cash. Valdivia Soto filed a motion to suppress evidence seized pursuant to the warrant, arguing that officers failed to establish their confidential informant's basis of knowledge and veracity. The trial court denied this motion, and a jury found Valdivia Soto guilty of possessing methamphetamine with intent to deliver.

On appeal, Valdivia Soto argues that the trial court erred when it denied his motion to suppress and that the State presented insufficient evidence of an intent to deliver to sustain his conviction. He also challenges the imposition of community custody supervision fees in his judgment and sentence as contrary to the trial court's intention, which the State concedes.

We affirm the trial court's denial of Valdivia Soto's motion to suppress and affirm his conviction. We accept the State's concession that the supervision fees should not be imposed and remand for the trial court to strike this provision from Valdivia Soto's judgment and sentence.

FACTS

I. SEARCH WARRANT

Officers from the Longview Police Department Street Crimes Unit relied on information obtained from a confidential informant, whom they referred to as "X," to request a search warrant for Valdivia Soto's residence. Clerk's Papers (CP) at 32. X was working with the police "in exchange for leniency in a . . . pending criminal matter." *Id.* According to the affidavit in support of the search warrant, X understood that if they provided incorrect or inaccurate information, they would not be provided with leniency or continue to work as a confidential informant.

Officers indicated X was knowledgeable and reliable because X had previously used various controlled substances, including methamphetamine, and they were able to accurately explain what these substances look like, describe the types of materials typically used to package them for sales, and quote the prices for such substances. Additionally, X had previously "provided information that was found to corroborate with law enforcement findings during an investigation" and provided information that "incriminated X." *Id.* Based on "several conversations with X," officers believed that X's information was "accurate and truthful." *Id.*

X had previously met Valdivia Soto at his residence and was invited over "as a guest" shortly before officers filed the search warrant request. CP at 33. While at Valdivia Soto's residence, X observed what appeared to be methamphetamine and heroin. "[T]he suspected methamphetamine was packaged in plastic and look[ed] to weigh more than one ounce." *Id.* X alleged that they "observed [Valdivia Soto] conduct a drug transaction" and that Valdivia Soto "had plastic packaging readily available to package and distribute the suspected methamphetamine

to the buyer." *Id.* X also saw Valdivia Soto remove some suspected methamphetamine from "a common household item." CP at 34.

Based on the affidavit, the district court found probable cause to support issuance of a search warrant. The warrant authorized a search of Valdivia Soto's residence for evidence that he unlawfully possessed controlled substances and evidence related to distribution. Officers were instructed to search for "[c]ontrolled substances including, but not limited to [m]ethamphetamine [and h]eroin" and "[p]araphernalia for using, packaging, processing, weighing and distributing controlled substances." CP at 37 (boldface omitted).

When officers executed the warrant, Valdivia Soto was in his bedroom, and he was the only person in the residence. Officers detained Valdivia Soto in handcuffs and found "a glass smoking device" with methamphetamine residue in his pocket and $200 in cash in his wallet. Verbatim Report of Proceedings (VRP) (Apr. 22, 2021) at 190. Officers also located $798 in the pocket of a jacket found in his bedroom, $41 in a laundry detergent bottle, and $1,720 in the attic. In Valdivia Soto's room, officers found one large plastic bag containing approximately 70 grams of methamphetamine in a dresser drawer and at least one additional plastic bag containing methamphetamine. Also in Valdivia Soto's room, officers located a large digital scale and plastic packaging material. Elsewhere in the residence, officers found a large plastic bag of cocaine, a large brick of cocaine, a smaller digital scale, and more plastic packaging material.

No. 55802-5-II

The State charged Valdivia Soto with possession of methamphetamine with intent to deliver, possession of cocaine with intent to deliver, and possession of oxycodone without a valid prescription or doctor's order.[1]

II. MOTION TO SUPPRESS

Valdivia Soto filed a motion to suppress the evidence seized pursuant to the search warrant, arguing the State failed to establish its confidential informant's basis of knowledge and veracity under the *Aguilar-Spinelli* test. *See Aguilar v. Texas*, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 413, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).[2] He claimed the probable cause affidavit was insufficient because it relied only "on one prior occasion" when the informant had provided information that was corroborated by law enforcement and the informant's knowledge of "common and general information known among drug users." CP at 25-26. He further claimed that the information on the informant's criminal history was "vague and unreliable," that the informant was "in a prime position to fabricate first-hand

---

[1] Just before trial began, the State moved to amend the charge of unlawful possession of oxycodone to possession of fentanyl with intent to deliver. The trial court denied the State's motion to amend the charge from a class C felony to a class B felony on "the day of trial." VRP at 56. The State then moved to dismiss the unlawful possession charge based on *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), and the trial court granted this motion.

[2] *Aguilar* and *Spinelli* were both overruled by *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). However, Washington courts continue to apply the *Aguilar-Spinelli* test to cases involving confidential informants, even though the United States Supreme Court has abandoned it. *State v. Ollivier*, 178 Wn.2d 813, 849 n.15, 312 P.3d 1 (2013). This is because article I, section 7 of the Washington Constitution "is more protective than the Fourth Amendment." *State v. Lyons*, 174 Wn.2d 354, 359 n.1, 275 P.3d 314 (2012).

knowledge in great detail," and that the informant had an incentive to lie because their cooperation would result in leniency. CP at 26.[3]

At the CrR 3.6 hearing, Valdivia Soto argued that an affidavit must include "detailed facts," not just "conclusory statements." VRP (Apr. 19, 2021) at 14. The State responded that the statements provided by the informant "were factual, not conclusory," they were corroborated and "shown to be correct," and they "were against the informant's interest." *Id.* at 18.

On the record, the trial court verbally addressed the informant's basis of knowledge and veracity under the *Aguilar-Spinelli* test. The trial court concluded that both requirements were met, but the informant's veracity was a "closer call." *Id.* at 23. It ultimately concluded that although the affidavit's description of the corroborated information was "somewhat vague and conclusory," the corroboration of the informant's prior statements by police and the informant's statement against their own penal interest, when "taken all together," sufficiently established the informant's veracity. *Id.* at 24.

The trial court also entered findings of fact, none of which are specifically challenged on appeal. The trial court found that the affidavit was "based largely on the observations of a confidential informant," who "was a current or past drug user who was working with police in exchange for leniency in a criminal matter." CP at 175. The informant had described methamphetamine and heroin, how these drugs are typically packaged for sale, and their typical prices in the area. They had also previously provided information that incriminated themselves

---

[3] Valdivia Soto also argued there was an insufficient nexus between the location searched and the alleged criminal activity because the probable cause affidavit relied on "a single observation of a controlled substance." CP at 27. The trial court rejected this argument, and Valdivia Soto does not raise it on appeal.

and that law enforcement corroborated. The informant was in Valdivia Soto's residence "within 72 hours prior to" officers requesting the search warrant, and the informant relayed their personal observations from inside the residence. CP at 176. The trial court concluded that the State had established the confidential informant's basis of knowledge and their veracity. It denied the motion to suppress.

### III. TRIAL

At trial, the officers who executed the search warrant testified that they found plastic bags containing approximately 70 grams of methamphetamine in and on top of Valdivia Soto's bedroom dresser. One of the detectives from the street crimes unit testified that a drug user typically possesses less than two grams of methamphetamine at a time. *See also* VRP (Apr. 22, 2021) at 247-48 (testifying that it is uncommon for an average user to possess more than an eighth of an ounce, or approximately three and a half grams, at one time).

A large digital scale with "white crystal substance" on it was found in a plastic bin in Valdivia Soto's bedroom, and a small digital scale with white residue was found in a kitchen drawer. *Id.* at 230. One of the officers agreed that drug users may possess scales, so owning a scale does not "[i]n and of itself" indicate that a person is selling drugs. *Id.* at 217. They testified, "Occasionally, I find people with user amounts [of drugs] that will also have smaller scales." *Id.* However, another officer explained, "Drug users can have scales, but the scales are smaller in size compared to that scale [from Valdivia Soto's bedroom], which is a kitchen scale, which is more for dealers, because of the quantity" of controlled substance that they weigh. *Id.* at 235-36; *see also* VRP (Apr. 23, 2021) at 310 (describing the scale in Valdivia Soto's bedroom as "fairly big" compared to what the officers "usually come across").

Officers also located packaging material, specifically small plastic bags, in the kitchen. These bags were smaller than sandwich bags, a "[c]ouple inches, at most," with images of mushrooms on them. VRP (Apr. 22, 2021) at 210. A detective from the street crimes unit testified that these were "consistent with what's used to package and distribute drugs in [the] area" and agreed that it was common for the packaging material to have images on it. *Id.* Another officer explained that "the most common form of packaging . . . would be what's commonly known as a jeweler's bag, or a very small [Ziploc] bag . . . like a one-by-one or a one-by-two[-inch Ziploc] bag." *Id.* at 244-45. Officers also found "new and unused plastic baggies" in Valdivia Soto's closet and dresser that matched baggies containing "some substances." *Id.* at 230.

There was approximately $800 in one of Valdivia Soto's jacket pockets, as well as approximately $40 in a laundry detergent bottle and $200 in Valdivia Soto's wallet. However, officers did not find any ledgers, "payout sheets," stolen items, or safes. *Id.* at 200. There was also no testimony describing a controlled buy or observed drug transaction.

In the attic, officers found large amounts of cocaine and $1,720 "under the floor." *Id.* at 222. A small amount of cocaine was also found in the kitchen. Valdivia Soto rented a room at this residence, but he was not the owner of the house. He testified in his defense that he was a drug user but not a drug dealer. He admitted that he uses methamphetamine but denied using cocaine and insisted that he had never been in the attic of the house.

The jury found Valdivia Soto guilty of possessing methamphetamine with intent to deliver, but it found him not guilty of possessing cocaine with intent to deliver.

IV. SENTENCING

Valdivia Soto requested a sentence at the low end of the standard sentencing range and asked the trial court to "find that he is indigent, suspend as much of the fine[s] as possible, [and] waive any other fees," except for the jury demand fee and the mandatory $500 crime victim assessment. VRP (May 3, 2021) at 372. The trial court imposed a midrange sentence of 16 months of incarceration and 12 months of community custody. It found that Valdivia Soto was indigent. In Valdivia Soto's judgment and sentence, under the heading of "Legal Financial Obligations," the trial court imposed the mandatory $500 victim assessment fee and struck the criminal filing fee, jury demand fee, and DNA collection fee, for a stated total obligation of $500. CP at 150 (boldface omitted). In a separate section of Valdivia Soto's judgment and sentence, under the heading of "Community Custody," boilerplate language requires him to also "pay supervision fees as determined by [the Department of Corrections]." CP at 148-49 (boldface omitted).

Valdivia Soto appeals the trial court's denial of his motion to suppress, his conviction, and the imposition of community custody supervision fees.

ANALYSIS

I. MOTION TO SUPPRESS

Valdivia Soto argues the trial court erred when it denied his motion to suppress evidence seized pursuant to the search warrant because the affidavit in support of the warrant failed to establish the confidential informant's basis of knowledge and veracity. We disagree.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution protect against a search of one's home without lawful authority, which may be provided by a warrant. A search warrant may only issue where there is probable cause to

support it. *State v. Ollivier*, 178 Wn.2d 813, 846, 312 P.3d 1 (2013). "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.'" *Id.* at 846-47 (quoting *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003)). The affidavit must rely on "more than mere suspicion or personal belief that evidence of the crime will be found at the place to be searched." *Jackson*, 150 Wn.2d at 265.

Where the supporting affidavit is "based on an unidentified informant's tip," it "must contain some of the underlying circumstances that led the informant to believe that evidence could be found at the specified location." *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012) (citing *Aguilar*, 378 U.S. at 114; *Spinelli*, 393 U.S. at 413). This requirement is referred to as the "basis of knowledge" prong of the *Aguilar-Spinelli* test. *Id.* at 359 n.2. This test also includes a "veracity" prong that requires the affidavit to "contain information from which a determination can be made that the informant is credible or the information reliable." *Ollivier*, 178 Wn.2d at 849-50. "Both prongs must be satisfied." *State v. Wolken*, 103 Wn.2d 823, 827, 700 P.2d 319 (1985).

The Washington Supreme Court appears to have articulated two different standards of review for probable cause determinations. In *Ollivier*, the court applied a de novo standard to "[t]he determination whether the qualifying information amounts to probable cause." 178 Wn.2d at 848. More recently, in *State v. Scherf*, the court explained that we review the magistrate's probable cause determination for abuse of discretion and resolve any doubts in favor of upholding the warrant, without overruling any prior holding. 192 Wn.2d 350, 363, 429 P.3d 776 (2018); *see also State v. Gudgell*, 20 Wn. App. 2d 162, 174 n.7, 499 P.3d 229 (2021) (comparing the standards in

*Ollivier* and *Scherf*). Under either standard, the trial court did not err when it denied the motion to suppress. Because Valdivia Soto "does not challenge any of the trial court's findings of fact, we consider them verities on appeal." *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011).

A.      Basis of Knowledge

The basis of knowledge prong may be satisfied where the informant declares they have personally observed the facts that they are asserting and are thus "passing on firsthand information." *State v. Jackson*, 102 Wn.2d 432, 437, 688 P.2d 136 (1984); *see also Wolken*, 103 Wn.2d at 827 (holding this prong was satisfied where "the informant claimed to have personally viewed the marijuana in some detail and was passing on firsthand information"). Where the warrant authorizes a search for controlled substances, the affidavit may establish the informant's basis of knowledge by showing "that the observer had the necessary skill, training or experience to identify the controlled substance" or "that the observer provided enough firsthand, factual information to an individual who possesses the necessary skill, training or experience to identify the controlled substance." *State v. Ibarra*, 61 Wn. App. 695, 702, 812 P.2d 114 (1991). In *Ibarra*, this court concluded that the basis of knowledge prong was not satisfied in part because the affidavit did not explain "how the informant gained this knowledge" or supply "factual, underlying information to support an independent conclusion either by [the affiant] or the magistrate that what had been observed was [a controlled substance]." *Id.*

This case is more like *Jackson* and *Wolken* than *Ibarra*. Here, Valdivia Soto does not challenge any of the trial court's findings of fact, so they are verities on appeal. *See Campbell*, 166 Wn. App. at 469. The trial court found that X personally observed methamphetamine and plastic packaging at Valdivia Soto's residence, as well as a drug transaction. The confidential informant

was "passing on firsthand information." *Jackson*, 102 Wn.2d at 437. Additionally, the affidavit explained that the informant possessed the necessary experience to identify controlled substances because they had previously used various controlled substances themselves, including methamphetamine. The informant had accurately described what methamphetamine looks like, the types of materials typically used to package it, and the standard prices for purchasing it in the area, all of which further demonstrated the basis of the informant's knowledge. We conclude this prong of the test was satisfied.

B.    Veracity

"The most common way to satisfy the 'veracity' prong" is to show the confidential informant's "'track record,'" meaning that they have previously supplied police with accurate information. *Jackson*, 102 Wn.2d at 437. For example, if the informant has previously provided information that has led to arrests and convictions, that fact is generally considered sufficient to establish the informant's veracity. *State v. Fisher*, 96 Wn.2d 962, 965, 639 P.2d 743 (1982). In contrast, "a mere conclusion" that the informant is "'reliable'" or "'has proven to be reliable'" is not sufficient. *State v. Woodall*, 100 Wn.2d 74, 76, 666 P.2d 364 (1983).

In *Fisher*, the Supreme Court concluded that although additional detail is preferable, an affiant's statement "that the informant had given him information proven to be true and correct in the past" was enough of a "factual statement" to allow the magistrate to independently determine whether the informant was credible. 96 Wn.2d at 965. Statements "against the informant's penal interest" may also satisfy this prong. *Jackson*, 102 Wn.2d at 437; *see also State v. Lair*, 95 Wn.2d 706, 711, 630 P.2d 427 (1981) ("Statements against penal interest are not often made lightly and may support an inference of reliability.").

11

Here, the affidavit provided more than a conclusory statement of X's reliability. Although it did not include any underlying details, the affidavit stated that this informant had previously "provided information that was found to corroborate with law enforcement findings during an investigation." CP at 32. This is a factual statement, analogous to the statement that the Supreme Court held sufficient in *Fisher*. Moreover, the affiant asserted that X had engaged in "several conversations" with officers, implying that there was an established and ongoing relationship. *Id.* The informant had also provided some information that incriminated themselves, and a magistrate may infer reliability from any statements against one's own penal interest. *See Jackson*, 102 Wn.2d at 437; *Lair*, 95 Wn.2d at 711. We conclude this prong of the test was satisfied.

In sum, we hold that both prongs of the *Aguilar-Spinelli* test were satisfied here. The trial court did not abuse its discretion when it denied Valdivia Soto's motion to suppress.

## II. SUFFICIENCY OF THE EVIDENCE

Valdivia Soto argues the State presented insufficient evidence at trial to prove that he intended to deliver a controlled substance. He contends the evidence established only personal drug use because the amount of cash found was not "tremendously large . . . , particularly for someone involved in the construction industry who may be paid in cash," and the scales "could be consistent with both an intent to deliver and personal use." Br. of Appellant at 30. We disagree.

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State and ask whether it was sufficient for any rational trier of fact to find guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When raising a sufficiency argument, the defendant admits the truth of the State's evidence and we may draw all reasonable inferences from that evidence. *Id.* at 265-66.

12

Evidence of intent is typically circumstantial. *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995). Circumstantial evidence is as reliable as direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). However, "[e]vidence that a defendant had the intent to deliver must be 'sufficiently compelling' that the intent 'is plainly indicated as a matter of logical probability.'" *State v. Sprague*, 16 Wn. App. 2d 213, 233, 480 P.3d 471 (2021) (internal quotation marks omitted) (quoting *Davis*, 79 Wn. App. at 594).

Possession of a large amount of a controlled substance, without more, cannot support an inference of an intent to deliver. *State v. O'Connor*, 155 Wn. App 282, 290, 229 P.3d 880 (2010). But "a finder of fact can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor." *State v. Hotchkiss*, 1 Wn. App. 2d 275, 280, 404 P.3d 629 (2017). The presence of a scale and the presence of packaging material are "additional factors that courts have held suggest an intent to deliver." *Sprague*, 16 Wn. App. 2d at 235. Because a defendant may possess a scale for personal use, however, a scale "is usually considered in conjunction with other circumstantial evidence that is similarly suggestive of such intent." *Id.* at 234. A defendant's "possession of a large amount of cash" may also be an additional factor suggestive of intent to deliver. *Hotchkiss*, 1 Wn. App. 2d at 280.

Here, it is undisputed that Valdivia Soto possessed at least 70 grams of methamphetamine in his bedroom. Officers testified that methamphetamine users typically possess two or three grams at a time.

In addition, officers located a small scale in the kitchen of the residence and a larger scale in Valdivia Soto's bedroom. Although possession of a scale may be consistent with only personal drug use, the officers who executed the warrant at Valdivia Soto's residence expressed that the

scale in his bedroom was "fairly big" compared to what they usually see. VRP (Apr. 23, 2021) at 310. They explained that drug users typically have scales that are "smaller in size," whereas larger scales are "more for dealers, because of the quantity" of substance that dealers typically weigh. VRP (Apr. 22, 2021) at 235-36. Thus, the scale in Valdivia Soto's room suggests an intent to deliver.

Officers also found small plastic bags in the kitchen and in Valdivia Soto's bedroom. The officers testified that these approximately one- or two-inch Ziploc baggies were the "most common form of packaging" for controlled substances and "consistent with what's used to package and distribute drugs in [the] area." *Id.* at 210, 244. In Valdivia Soto's room, there were some bags with substances inside and some bags that had not yet been used, further suggesting an intent to deliver.

And while searching Valdivia Soto's person and bedroom, officers recovered a total of over $1,000. Even assuming that Valdivia Soto might have possessed large amounts of cash due to his work in construction, as he argues for the first time on appeal, the State presented sufficient evidence to support an inference of an intent to deliver.

The State presented evidence that Valdivia Soto possessed a significant amount of methamphetamine, plus several additional factors suggestive of intent, including a "fairly big" scale; the "most common form of packaging" material, some of which had been used and some of which was unused; and a large amount of cash. *Id.* at 244; VRP (Apr. 23, 2021) at 310. Considered all together, the State's evidence was "'sufficiently compelling'" that Valdivia Soto's intent to deliver was "'plainly indicated as a matter of logical probability.'" *Sprague*, 16 Wn. App. 2d at 233 (internal quotation marks omitted) (quoting *Davis*, 79 Wn. App. at 594). Viewing the evidence and all reasonable inferences from it in the light most favorable to the State, we hold the State

presented sufficient evidence to sustain Valdivia Soto's conviction for possession of methamphetamine with intent to deliver.

### III. LEGAL FINANCIAL OBLIGATIONS (LFOs)

Valdivia Soto asks this court to remand to strike the imposition of community custody supervision fees in his judgment and sentence because "the record reflects that the trial court intended to waive all discretionary LFOs." Br. of Appellant at 34. The State agrees that "the trial court intended to impose only the mandatory victim assessment and to waive all nonmandatory LFOs," and it also asks this court to remand to strike the supervision fees. Resp't's Br. at 17. Supervision fees are discretionary LFOs. *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022 (2020).

By its concession here, the State, as the proponent of the fee below, is effectively withdrawing its request that Valdivia Soto pay this fee as part of his sentence. We accept the State's concession and remand for the trial court to strike the supervision fees.

### CONCLUSION

We affirm the trial court's denial of Valdivia Soto's motion to suppress and affirm his conviction for unlawful possession of a controlled substance with intent to deliver. We accept the State's concession and remand for the trial court to strike the community custody supervision fees from Valdivia Soto's judgment and sentence.

No. 55802-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Maxa, J.

Price, J.